The State v. Jones.

## THE STATE v. JONES, *Appellant*.

1.   **Murder**: INSTRUCTIONS: SELF-DEFENSE.   An instruction to the effect that, if defendant willfully shot and killed the deceased, and seeks to justify such killing on the ground of self-defense, he must establish the same from the whole evidence to the reasonable satisfaction of the jury, *Held*, not to conflict with the doctrine that, if the jury from a review of the whole case have a reasonable doubt of the defendant's guilt, they should acquit.

2.   ——— : ———.   An instruction, which is substantially given in another, is for that reason properly refused.

*Appeal from Randolph Circuit Court.*—HON. G. H. BURCK-HARTT, Judge.

AFFIRMED.

On behalf of the State, it was testified that defendant, having both hands in his sack-coat pockets, stepped out of a drug store and walked rapidly toward the deceased, who was walking very slowly, holding a tobacco stick in his left hand and his right in his pantaloons pocket.   When

they reached each other and had stopped, deceased was leaning on the tobacco stick and had his right hand in his pantaloons pocket. Defendant said something to deceased, and thereupon shot through his coat pocket. Deceased then jerked his hand out and clutched defendant, who told him to let him loose or he would shoot him through the head again. Deceased called on a witness to come and help him. Defendant told the witness not to come any nearer. Defendant's coat pocket was on fire. After deceased fell, defendant said, "Damn you, you won't bother me any more." Defendant was then appealed to by a witness to come and help the deceased, but looked hard at the witness and said nothing. A loaded pistol was taken from deceased's hind pocket after he was shot. One witness testified that ten or twelve days before the shooting, defendant had related a conversation between himself and another, in which he reported himself as saying, in reply to the other person informing him that there was some talk about defendant's wife and deceased, that, if it was true, deceased would have to smell gunpowder, and, if it was not true, some others would have to smell gunpowder. After the shooting defendant said to the justice of the peace that he was not going to run away, showed no disposition to run off, and came before the justice when sent for. On the way to jail, defendant, when asked why he had killed deceased, replied that he had stood it as long as he could, and would have killed deceased long ago but did not want his blood on his hands.

On behalf of defendant it was testified that deceased said he did not want to take defendant's blood, nor did he want defendant to take his blood, and that these statements had been repeated to defendant. Defendant's general reputation for peace and quietness was proven to be good. Deceased said the day before the killing that he had been criminally intimate with defendant's wife. Defendant, himself, testified that on the morning of the killing, his wife, for the first time, admitted her criminal intimacy with deceased,

and handed him a bottle, saying that she thought that was the medicine which gave deceased (who was defendant's family physician) his influence over her. The bottle was produced and identified, and a physician testified that from is taste and smell he believed it to be a diluted tincture of cantharides or Spanish flies. Defendant told his wife he could live no longer with her; that he would see deceased, who perhaps would furnish her with the means to take her to her father in Kentucky; that it was nothing more than just that he should do so; that he went to see deceased for this purpose, and knowing that he had a pistol, took one along himself for his protection, and fired in the interview when he saw deceased withdrawing his hand from his pocket.

The State prayed and the court gave the following instructions:

1. If the jury believe from the evidence, beyond a reasonable doubt, that the defendant, at the time and place charged in the indictment, with a pistol, willfully, deliberately, premeditatedly and of his malice aforethought, shot and killed Samuel H. Blair, then they must find him guilty of murder in the first degree, and so state in their verdict and nothing more.

2. If the jury believe from the evidence, beyond a reasonable doubt, that the defendant, at the time and place charged in the indictment, with a pistol, willfully, premeditatedly and of his malice aforethough, (but without deliberation, that is, in a heated state of passion,) shot and killed Samuel H. Blair, then they should find him guilty of murder in the second degree, and assess his punishment at imprisonment in the penitentiary for a term not less than ten years.

3. The word willful, as used in the indictment and in these instructions, means intentionally, that is, not accidentally; deliberately means in a cool state of the blood, that is, not in the heat of passion; premeditated means thought of beforehand for any length of time however

short; malice in the instructions does not mean hatred or ill-will, as it commonly does, but it means the intentional doing of a wrongful act; heat of passion, as used in these instructions, means a condition of quick anger or sudden injury, engendered by a real or supposed grievance suffered at the time, and in order to reduce the crime from murder in the first to murder in the second degree, the killing must be done upon the instant the provocation is given, before the blood has had time to cool and reason to resume its sway, before the mind has time to consider the character and gravity of the act about to be done, and not from hatred or for pre-existing revenge.

4. If the jury believe from the evidence that the defendant, with a pistol, willfully shot and killed the deceased, as charged in the indictment, then, before such killing can be justified on the ground of self-defense, it must appear to the reasonable satisfaction of the jury from the whole of the evidence that the defendant, at the time of shooting, had reasonable cause to believe, and did believe that the deceased was about then to kill him, (the defendant,) or do him some great bodily harm; and that defendant had reasonable cause to believe, and did believe that there was immediate danger of such design on the part of deceased being accomplished; and that defendant did shoot and kill deceased to prevent such immediate harm to himself, and not to gratify a grudge.

5. If the jury believe from the evidence that defendant sought the deceased and provoked or brought on the difficulty which resulted in the death of the deceased by any unlawful act of his committed at the time, or that defendant, voluntarily and of his own free-will, entered into the difficulty, then there is no self-defense in the case, and the jury cannot acquit on that ground; and in such case it makes no difference how imminent the defendant's real or apparent peril may have become during the conflict. If the jury believe from the evidence that Dr. Blair had reasonable cause to believe that defendant was about to kill

him or do him great bodily harm, then Blair had the right to arm and defend himself, and if the jury further find from the evidence that defendant, after being informed of the fact that Blair was afraid for his life and had armed himself, voluntarily went to meet Blair and by menacing conversation or conduct alarmed Blair and gave him reasonable cause to believe that he (defendant) was about to kill him (Blair), or do him great bodily harm, and in this way and by these means brought on the difficulty, then defendant was the aggressor, and there is no self-defense in this case.

6. The jury are instructed that the fact that Dr. Blair may have been or had been guilty of adultery with defendant's wife, did not justify defendant in seeking Blair and taking his life. If he did so, defendant cannot be acquitted on that ground. Although the jury may believe from the evidence that Dr. Blair had been guilty of adultery with defendant's wife and that defendant had been informed of the fact, yet, if sufficient time had elapsed, after defendant was made aware of the fact and before the killing, for defendant's blood to cool, then the fact of such adultery neither excuses nor mitigates defendant's crime.

7. Defendant is a proper witness in his own behalf, but the jury may consider the fact that he is the accused person testifying in his own behalf, in determining what weight and credibility they will give to his testimony.

8. The jury are instructed that a reasonable doubt, as used in these instructions, means a substantial doubt of defendant's guilt arising from the evidence, and not a mere possibility of defendant's innocence. The jury are instructed that there is no testimony going to show that Dr. Blair ever administered to defendant's wife any drug or preparation for the purpose of exciting her sexual passions, and any statement made by defendant's wife to that effect cannot be considered by the jury as proof of that fact, but may be considered as proof that defendant was so informed.

9. The court instructs the jury that whilst they may

take into consideration the previous good character of defendant together with all the other facts and circumstances of the case adduced in evidence, in determining whether or not defendant is guilty of the offense charged in the indictment, yet if from the whole testimony they believe defendant is guilty, then his previous good character neither justifies, mitigates nor excuses the offense.

The defendant asked the court to instruct the jury as follows:

1. The jury may consider the character of defendant for peace and quietude in determining his guilt or innocence of the crime of which he is charged.

2. The law presumes defendant innocent and not guilty, as charged in the indictment, and this presumption of innocence follows him through the entire trial until removed by evidence, and touching every material act necessary to constitute the crime charged.

3. If the jury shall believe from the evidence adduced in the case that defendant had reasonable grounds to apprehend a design on the part of the deceased to commit a felony upon him or to do great bodily harm to defendant, and that there was reasonable cause to apprehend immediate danger of such design being accomplished, and that he killed deceased in order to prevent the accomplishment of such design, then you should acquit defendant on the ground that such homicide is justifiable.

4. In determining whether defendant was justified in acting upon appearances and shooting Blair, the jury may take into consideration any threats that may have been made by Blair against the life of defendant and communicated to defendant prior to the killing, if the jury find that such threats were made and communicated:

5. If the jury find from the evidence that defendant and Dr. Blair entered into a conversation about a matter of trouble between them, and that Blair came within a few feet of defendant with his right hand in his pocket, and that before any design or attempt on the part of defendant

to do any personal injury to said Blair, he, the said Blair, by his attitude, language, movement, appearance and former communicated threats, furnished defendant reasonable cause to apprehend a design to take his life or do him great bodily harm, and reasonable cause to apprehend immediate danger of the accomplishment of such design, and that defendant then fired the fatal shot to prevent said Blair from accomplishing such design, then the jury must acquit the defendant.

The sixth instruction is quoted in the opinion.

7.  It is not necessary, in order to acquit on the ground of self-defense, that the danger under which defendant acted, if he did so act, should have been real or actual, or that such danger should have been impending and about to fall on the defendant; but it is only necessary that defendant had reasonable cause to apprehend that there was immediate danger that a design to commit a felony on him or to do him great bodily harm was about to be accomplished.

8.  The burden of proving defendant's guilt continues upon the State from the beginning to the termination of the trial, and that if the jury find that defendant has introduced evidence sufficient to create in the minds of the jury a reasonable doubt of his guilt, they must acquit; but a doubt, to authorize an acquittal, must be a substantial doubt of defendant's guilt, and not a mere possibility of defendant's innocence

Of the foregoing instructions the court gave those numbered one to six, inclusive, and refused those numbered seven and eight.

*Reed & Hall* and *William Henry* for appellant.

*D. H. McIntyre*, Attorney General, for the State.

SHERWOOD, J.—The defendant, indicted for murder in the first degree, for killing Sam'l H. Blair, was found guilty of murder in the second degree, and his punishment assessed at ten years in the penitentiary.  The usual instructions, as

applicable to the facts of the case, were given on the part of the State, and we have been able to discover nothing objectionable in them, and whatever lack there was in the instructions given for the State was fully supplied by such as were given on behalf of the defendant.

The fourth instruction for the State is certainly not obnoxious, because it told the jury that if the defendant

1. MURDER; instruc- willfully shot and killed the deceased, that
tions: self-defense. in order to be justified on the ground of
self-defense, he would have to establish such defense from the whole evidence to the reasonable satisfaction of the jury. If a defendant sets up any defense, it of course belongs to him to establish it to the satisfaction of the jury, in order to succeed on that particular issue, though of course his failure thus to succeed would not authorize his conviction if the jury, from a review of the whole case, had a reasonable doubt of his guilt, and the usual instruction as to such doubt was given. When the State proves that a defendant did the killing, with a deadly weapon, this, without more, under our rulings, makes out a *prima facie* case of murder in the second degree, and any matter of excuse, justification or extenuation of the offense, rests with the accused. Kelley Crim. Law, § 242 ; *State v. Underwood,* 57 Mo. 40 ; *State v. Holme,* 54 Mo. 153 ; 1 Bishop Crim. Prac., §§ 1050, 1066.

In reference to the seventh instruction asked by the defendant, but refused by the court, it was properly refused,

2. —— : ——. for this reason if no other, that it was substantially given in the sixth instruction given on his behalf, as follows : " That while the right of self-defense does not imply the right of attack, so as to avail the defendant in case he sought and induced a difficulty with the deceased, for the purpose of affording a pretext to wreak his malice, yet if on the occasion of the shooting and death of the deceased, the defendant met the deceased with the design of an amicable arrangement of their affairs, and not of doing bodily harm or injury to the deceased,

and that without defendant's making any attempt to inflict any such injury or harm, the deceased assumed such attitude or appearance as under the. circumstances to furnish defendant reasonable ground to apprehend a design to take his life or do him great bodily harm, and that there was reasonable cause to apprehend immediate danger of such design being accomplished, and that he fired the fatal shot and killed the deceased to prevent him from accomplishing such design, then, under the law, the killing was justifiable, although in fact such appearance was false, and there was in fact neither design to do injury to defendant nor danger of its being done." This instruction is certainly as broad as the defendant could possibly ask, and fully as broad as that authorized by the *State v. Eaton*, 75 Mo. 586.

The case of the *State v. Zumbunsen*, decided last term, shows and is decisive of the immateriality of the statement made by the counsel for the State.

For these reasons we affirm the judgment. All concur, except HENRY, J., dissenting.