## THE STATE v. ASA Q. BURNS, Appellant.

### Division Two, February 26, 1926.

1. **MOTION FOR NEW TRIAL: Supplemental: Abandonment of Original.** A supplemental motion for a new trial, timely filed, in which the mover asks the court to set aside the verdict of the jury and grant him a new trial "for the following reasons in addition to the reasons set forth in the motion for a new trial filed" on a previous day, is not an abandonment of such previous motion timely filed, and neither the trial court nor this court is restricted to a consideration of the assignments of error contained in said supplemental motion. The supplemental motion clearly and in unmistakable terms calls the attention of the court to the fact that the mover is not abandoning the grounds already set forth in the previous motion, and for that reason it should not be held to be an abandonment, although the practice is not to be commended.

2. **FELONIOUS ASSAULT: Self-Defense: Apprehended Assault: Insults to Wife as Reinforcing Apprehension.** In the trial of defendant, charged with felonious assault with intent to kill, where the State's evidence indicates that the defendant, as the prosecuting witness was about to meet him on a public street, drew a pistol and, without any provocation whatever, began to shoot him, and where the defense is self-defense and that defendant did not shoot until the witness made hostile movements and assumed an attitude indicating he was about to shoot defendant, testimony of defendant's wife that while she, with her child, and the prosecuting witness were rooming at the same house and while the defendant, her husband, was absent in a distant city, the prosecuting witness attempted undue familiarities, laid lascivious hands on her, against her will, sought to fondle and caress her, to enter her room and at one time drew her into his room and attempted to have sexual relations with her; that she resented his conduct, successfully
312 Mo. Sup.—43.

resisted him, complained to the landlady, and communicated to defendant the nature of the indignities, and that he immediately returned, and arrived the day preceding the assault; and testimony by defendant that, immediately upon being informed of the indignities to his wife, he returned and she detailed to him all the facts concerning the prosecuting witness's conduct to her, is admissible, and being properly proffered, it was error to exclude it. The defense being self-defense, and there being some evidence of an intended assault upon defendant, the testimony was competent as tending to show the reasonableness of defendant's apprehension of danger and for the purpose of aiding the jury to determine who was the aggressor. A movement made by either man under such circumstances might well be considered as hostile and as affording a basis of reasonable apprehension of danger, which, under normal and less strained circumstances, would not and could not reasonably be regarded as hostile or as affording the slightest ground for apprehension of danger; and without such testimony, the assault upon the prosecuting witness, under such circumstances, as made by the State's evidence, is wholly unexplained and incomprehensible. [Distinguishing State v. Stewart, 278 Mo. l. c. 191, 296 Mo. 12; State v. Privitt, 175 Mo. 207; State v. Vest, 254 Mo. 458; State v. Jones, 78 Mo. 278, and other cases.]

3. ———: ———: **Apprehension of Danger: All Attendant Facts.** Where the jury must determine whether defendant acted in self-defense in making an assault upon another, all testimony which tends to shed light upon the all-important question of who was the aggressor and whether defendant's apprehension of danger was reasonable under the circumstances, is admissible. But the court should instruct the jury for what purpose it is admissible and caution the jury to limit its consideration to that purpose.

4. ———: ———: **Purchase of Pistol: Explanation: For Protection of Wife.** Where defendant is being prosecuted for felonious assault by shooting a man upon the street, who was a stranger to him and who was at the time pointed out to him by his wife as they were about to meet him on the street, testimony that defendant purchased the pistol before the shooting because she desired it to protect herself against the lascivious approaches of the man, who had, in defendant's absence, frequently made indecent proposals and assaults upon her, is competent, as is also their testimony that, at the time they met the man, they were going into the country to acquaint her by practice with its use. Such testimony is competent on the issue of malice.

Criminal Law, 16 C. J., Section 2155, p. 854, n. 7, 7 New; Section 2615, p. 1117, n. 99 New; Section 2734½, p. 1216, n. 19 New. Homicide, 30 C. J., Section 421, p. 193, n. 46; Section 473, p. 235, n. 97, 98; p. 236, n. 4, 5.

State v. Burns.

Appeal from Audrain Circuit Court.—*Hon. Charles T. Hays,* Special Judge.

REVERSED AND REMANDED.

*E. A. Shannon* and *Curlee & Hay* for appellant.

(1)   The evidence offered by defendant tending to prove that the prosecuting witness had made improper and indecent proposals to and assaults upon defendant's wife, and that knowledge of such facts had been communicated to defendant before the assault was admissible: (a) To support the plea of self-defense. Gafford v. State, 122 Ala. 54; State v. Thomas, 169 Iowa, 591. (b)   To prove provocation.   State v. Stewart, 274 Mo. 661; State v. Grugin, 147 Mo. 39; Bond v. Williams, 279 Mo. 215. (c) As a part of the *res gestae.*   Maher v. People, 10 Mich. 212. (2)   The evidence tendered by defendant to prove the reasons given by defendant for the purchase of the revolver was admissible.   Com. v. Hourigan, 89 Ky. 305; Knapp v. State, 79 N. E. (Ind.) 1076.

*Robert W. Otto,* Attorney-General, and *W. F. Frank,* Assistant Attorney-General, for respondent.

(1)   The alleged complaints in the original motion for new trial are not here for review, because the filing of the amended or supplemental motion for new trial is an abandonment of the original motion.   Brinton v. Thomas, 138 Mo. App. 73; Fussellman v. Railroad, 139 Mo. App. 201; Nedvidek v. Meyer, 46 Mo. 603; Kortzendorfer v. St. Louis, 52 Mo. 206; 20 R. C. L. p. 305, sec. 87. (2)   No error was committed in excluding testimony to show that the prosecuting witness had made indecent proposals to and improper advances toward appellant's wife.   State v. Stewart, 278 Mo. 191; State v. Stewart, 296 Mo. 19.   Such evidence is admissible only when discovery of same is so near the crime as to afford no time for inflamed passion to cool.   State v. Privitt, 175 Mo. 207;

State v. France, 76 Mo. 685; Collins v. Todd, 17 Mo. 537; Coxe v. Whitney, 9 Mo. 531; State v. Vest, 254 Mo. 459; State v. Jones, 78 Mo. 278; Endicott v. Robertson, 244 S. W. 948; 16 A. L. R. 825. (3) Evidence of defendant as to his reason why he was buying a revolver for his wife was properly excluded because self-serving.

BLAIR, J.—Defendant was convicted of assault with intent to kill with malice aforethought. The jury assessed his punishment at imprisonment in the penitentiary for two years. Defendant appealed from the judgment entered on such verdict.

As the chief questions in the case relate to the admissibility of certain testimony offered by defendant and excluded by the trial court and as defendant makes no contention that the evidence was insufficient to support the verdict, only a brief statement of facts is necessary. There is no controversy concerning the main facts, except as to the acts and conduct of the prosecuting witness immediately preceding the assault, upon which defendant's plea of self-defense was based.

Defendant and his wife were walking eastward upon the north sidewalk of Promenade Street in the city of Mexico, Missouri, shortly after the lunch hour, on March 1, 1924, when they met the prosecuting witness, Howard D. Conger, coming toward them upon the same side of the street. When Conger and defendant were a few feet apart, defendant drew a pistol and fired at Conger. Three or four shots altogether were fired by defendant. Two of them took effect. Conger was seriously wounded, but recovered and testified at the trial.

Defendant and his wife testified that, as Conger approached them, defendant's wife clutched his arm in fear and said, "There's that man." Defendant asked, "What man?" and she said, "Conger." Mrs. Burns testified that Conger had his hands in his pockets and was looking at defendant with a queer expression on his face and had such a queer attitude that it frightened her and she made the remarks above quoted. She said Conger had gotten

close and was leaning forward and that defendant fired one shot and Conger leaped toward him and defendant shot two or three times and turned Conger's attack. Conger then passed on down the street.

After testifying concerning the remarks made to him by his wife as Conger approached, defendant said that ·he looked up and saw a man approaching eight or ten paces away. The man had his hands either in his front or his hip pockets. He had on an overcoat which was unbuttoned and thrown back.· He had an insolent attitude and defendant thought such attitude was threatening. When about ten feet away defendant saw some kind of a movement of Conger's hands, which were then in his pockets, and supposed he was armed and about to draw a weapon. He fired once. Conger withdrew his hands from his pockets and sprang toward defendant, who then fired two or three times while Conger's body was coming toward him. Defendant had no previous acquaintance with Conger and had only heard of him through his wife.

Conger's version agreed with that of defendant and his wife up to the time they approached closely. He said he saw defendant and his wife coming. He kept on coming and they kept walking toward him. When he got within ten or fifteen feet of them he turned his head and cleared his throat to spit. When he looked back defendant had his pistol drawn and immediately began firing. Conger was unarmed. He made no attempt to assault defendant.

Defendant was a minister of the Gospel and had served as pastor of a church or churches. At the time of the assault he held the position of instructor in Bible at Hardin College in Mexico, though he was then and had been for sometime in attendance at college in Chicago. It was shown that defendant sustained a good reputation as a peaceable, law-abiding, honorable and upright citizen.

We have simply sketched the barest outline of the facts. Certain proof was excluded by the court which, if admitted and believed by the jury, would have thrown light upon the otherwise strange and unusual acts and

conduct of defendant and explained much that appears to be unaccountable in the bare facts permitted to go to the jury. The action of the court in excluding this proof constitutes the chief complaint of defendant in this court. The nature of such proof will appear hereinafter in connection with our consideration of its admissibility.

The jury returned its verdict on June 17, 1924, and. upon the same day defendant filed motions for new trial and in arrest of judgment. Three days thereafter and within four days after the verdict was returned into court, defendant filed a motion, the first paragraph of which is as follows:

"Comes now the defendant and for his supplemental motion for a new trial moves the court to set aside the verdict of the jury in the above-entitled cause and grant him a new trial thereof for the following reasons in addition to the reasons set forth in the motion for a new trial filed on the 17th day of June, 1924, to-wit:" (Then follows a statement of such reasons.)

Respondent contends that the filing of said supplemental motion for new trial constituted an abandonment of the original motion for new trial and hence that the only matters before this court for review, outside of the questions raised by the motion in arrest of judgment, are the assignments of error made in said supplemental motion.

The purpose of the motion for new trial is to call the attention of the trial court to matters and rulings occurring during the progress of the trial, which the movent contends constitutes reversible error, in order to give the trial court an opportunity to correct its own errors, if any there were, and to avoid the necessity of an appeal, as well as to furnish proof to the appellate court that such alleged errors were properly called to the attention of the trial court.

The authorities cited by respondent are Brinton v. Thomas, 138 Mo. App. l. c. 73; Fussellman v. Railroad, 139 Mo. App. l. c. 201; Nedvidek v. Meyer, 46 Mo. l. c. 603; Kortzendorfer v. St. Louis, 52 Mo: l. c. 205, 206, and 20

R. C. L. 305, sec. 87.  We have carefully studied the cases
and the text cited, but are of the opinion that they are not
controlling here.  In none of such cases are the facts like
those here or so similar as to be controlling.  The broad
proposition is stated that an amended petition, answer or
reply constitutes an abandonment of the original plead-
ing.  In the Brinton and Fussellman cases amended mo-
tions for new trial were filed more than four days after
verdict and judgment, and the original motions for new
trial were held to be the motions properly before the ap-
pellate court because they were not superseded by
amended motions which had been filed out of time.  Those
cases state the rule to be that a timely amended motion for
new trial constitutes an abandonment of the original mo-
tion, just as an amended petition or answer constitutes
abandonment of the original pleading.  That such should
be the rule, when an amended motion for new trial is filed
which makes no mention of nor any reference to the
grounds for trial set out in the original motion, appears
to be reasonable.

But, keeping in mind that the office of a motion for
new trial is to call the attention of the trial court to er-
rors alleged to have occurred during the progress of the
trial, the reason for such rule fails where, as here, the mo-
tion, called a supplemental motion, clearly and in unmis-
takable terms calls the attention of the trial court to the
fact that the moving party is not abandoning the grounds
already set forth in the original motion and plainly states
that the grounds set forth in the supplemental motion
are ''in addition to the reasons set forth'' in the original
motion.

One reason for the rule that an amended pleading
constitutes an abandonment of the prior pleading, rests
upon the presumption that such was the intention of the
pleader.  Such presumption may well be indulged where
the pleader does not seek to bring into the amended
pleading by reference matters alleged in the original
pleading.  Another reason is that the party should be re-

quired to set forth in one pleading all the facts upon which he relies to constitute his case or his defense.

The last reason finds expression in Section 1283, Revised Statutes 1919. It was on this provision of the Code (Wagner's Statutes 1035, sec. 13) that the case of Nedvidek v. Meyer, supra, and the case of Ticknor v. Voorhies, 46 Mo. 110, cited in the Nedvidek case, were ruled. No such statutory provision is found in connection with the sections authorizing motions for new trial in civil or criminal cases. [Secs. 1456, 4079, R. S. 1919.]

In the case of Kortzendorfer v. St. Louis, supra, it was held that the amendatory or supplemental answer must be complete within itself and when filed amounts to an abandonment of all previous answers. This was in conformity with the existing statute and in harmony with the Nedvidek case.

20 Ruling Case Law, 305, sec. 87, lays down the broad rule as to motions for a new trial that "all the grounds intended to be relied on must be included in one motion; the movent cannot separate them, and file a separate motion for each cause assigned." The text cites Moon v. Jennings, 119 Ind. 130, as authority. An examination of that case discloses that the court refused to consider an assignment of error raised in the second motion for new trial filed after the first motion had been overruled. There was no discussion in the opinion of abandonment of the first motion because of the filing of the second motion.

In Lincoln v. Beckman, 23 Neb. 677, the facts are quite like those in the case before us. Within the required time a "supplemental motion for new trial" was filed, which presented grounds for a new trial not set forth in the original motion; but the supplemental motion made no reference to the grounds set forth in the original motion. REESE, Ch. J., said: "The fact that the motion was styled 'supplemental' will have no bearing in the case, nor was it necessary that leave should be had, in order to file it. It is somewhat difficult to understand the purpose of the pleader, at the time of the filing of this motion. He does not seem to have desired to file it as

an amended motion for a new trial, as he omits any reference to the grounds alleged in his original motion. It cannot be styled a 'supplemental' motion, for the reason that all of the causes alleged therein existed at the time of filing the original motion. It is quite probable that he intended to abandon the grounds alleged in the first motion, and stand upon the second. While he had a clear right to file a motion for a new trial at any time within the 22d, 23d, or 24th days of May, yet we know of no rule of law which would authorize the filing of a motion for a new trial in separate sections or parts, thereby unnecessarily encumbering the record. We will therefore give our attention solely to the last motion filed."

While the Indiana court held that a motion or a new trial could not be filed in separate parts, the ruling seems to have been based largely upon the probability that movent intended to abandon the grounds alleged in the first motion and to stand upon the grounds alleged in the second motion, because movent "omits any reference to the grounds alleged in his original motion." Here defendant's intention not to abandon any of the grounds set forth in the original motion is perfectly apparent. He could not have used language to express such intention more clearly. Since the trial court could not have been misled by defendant's supplemental motion into the mistaken notion that defendant had abandoned the assignments of error made in the original motion, and therefore said trial court had full opportunity to correct its own errors, if any, we would not be justified in following the extremely harsh and technical rule contended for by the State. Both the original and supplemental motions have been preserved in the bill of exceptions. The record shows that the trial court considered both motions. Both motions are before us and we will consider both.

However, it should not be understood that this court commends the practice followed by defendant. Except for the saving grace of the specific reference in the supplemental motion to the grounds previously laid in the original motion, reason and precedent alike justify the pre-

sumption of abandonment. It is undoubtedly the proper, and certainly the safest, practice to embody in an amended or supplemental motion for new trial all the grounds set forth in the original motion, unless movent actually desires to abandon the grounds for new trial set forth in the original motion.

The assignment that error was committed in excluding alleged proper testimony offered by defendant was made in the original motion and not in the supplemental motion. When defendant's wife was on the witness stand defendant offered to prove by her that she, with her child, and Conger, the prosecuting witness, were rooming at the Henderson home in Mexico and that during the months of January and February, 1924, and while defendant was absent in Chicago, Conger attempted undue familiarities with her, laid lascivious hands upon her, against her will, sought to caress and fondle her, to enter her room and at one time drew her into his room and attempted to have sexual relations with her. The offer goes into greater details as to such conduct, but it is not necessary to recite all of it. Mrs. Burns resented such conduct and complained to Mrs. Henderson. She successfully resisted Conger's efforts. Late in February and after a renewal of such conduct by Conger, Mrs. Burns communicated to her husband something of the nature of the indignities she was compelled to endure. He immediately returned to Mexico, arriving early in the morning of February 28, 1924. Mrs. Burns then told defendant the details of Conger's alleged improper conduct toward her.

By defendant, when on the witness stand, it was sought to be shown that on February 27th defendant received a message from his wife to the general effect that Conger had been making improper advances toward her. He returned immediately to Mexico and his wife detailed to him all the facts in relation to the alleged advances of Conger covered by the offer of proof made while Mrs. Burns was on the witness stand. Thereafter defendant interviewed Judge Shannon and told him the facts related by his wife and authorized and directed Judge Shannon

to go to Conger and to demand that Conger desist from further attention to his wife.

It appeared upon cross-examination of Conger that Judge Shannon saw him and communicated to him a message from defendant. The nature of the message was not permitted by the court to be shown to the jury. It was shown that defendant purchased a revolver before the shooting. Defendant offered to prove by his wife that she desired the revolver for her protection against Conger, if he should persist in his attentions. This proof was likewise excluded.

It should be stated that it was shown in evidence that defendant and his wife moved from the Henderson home after defendant returned from Chicago and prior to the shooting. The possession of the revolver by defendant at the time of the shooting was explained in their testimony. It appeared that neither of them had had previous experience with firing a revolver and that they were taking it with them to go out into the country to practice with it.

It is quite apparent that this proffered evidence, if it had been admitted, would have shed much light upon the action of defendant at the time he fired the first shot at Conger. The reasons urged by counsel for its admission, when the excluded testimony was offered below, were that "it not only had bearing upon the state of mind of the defendant for the purpose of tending to disprove deliberation and malice, but as tending to show the personal relations that existed between the defendant and Conger at the time they met on March 1st and as tending to support the contention of the defense and the testimony which will be offered by the defendant that at the time he met Conger he construed certain acts of Conger's as hostile and believed that Conger was in the act of attacking him at the time he fired."

The defense of defendant was self-defense. The trial court gave instructions upon that subject, of which no complaint is made here. The question before us then is whether the excluded testimony should have been per-

mitted to go to the jury as tending to explain the acts and conduct of defendant at the time he shot Conger, in order to aid the jury in determining who was the aggressor in that encounter and in determining the reasonableness of defendant's alleged fear of injury or death at the hands of Conger immediately preceding the firing of the shots by defendant.

30 Corpus Juris, p. 235, sec. 473, lays down this general rule: ''Where the proof justifies the giving of a charge on the law of self-defense, defendant may for the purpose of showing deceased to have been the aggressor, and the killing to have been necessary in self-defense, introduce evidence tending to show that deceased entertained hostile feelings toward him. . . . Defendant may show that previous to the killing deceased had been guilty of acts and conduct evincing hostility toward defendant, or of conduct which would tend to explain the motive of deceased in acting as the aggressor.''

This general rule is well exemplified by two Texas cases. In Ball v. State, 29 Tex. App. 107, defendant offered to read in evidence, but was not permitted to do so, a certain postal card, telegram and letters written by the deceased to the sister and brother-in-law of the defendant, the contents of which were known to the defendant. Such documents disclosed the enmity of the deceased toward the defendant, the intensity of the same and the cause thereof and were offered by the defendant to show the reasonableness of his apprehension of danger from the attack made upon him by deceased. In disposing of the assignment of error based upon such ruling, WILLSON, J., said:

''We are of the opinion that the testimony was admissible for the purpose for which it was sought to be used. It was a bitter, unrelenting animosity on the part of the deceased toward defendant's sister and her husband, and also toward the defendant, engendered because of the engagement and marriage of defendant's sister, which engagement and marriage the defendant approved, but which the deceased bitterly opposed. It was important to the defendant that the jury should be fully

informed as to the true cause of the enmity entertained by the deceased against him, and of the character of that enmity. Such information would enable the jury, in determining the issue of self-defense, to view the acts of the deceased from the defendant's standpoint. Without this information the jury could not view the circumstances of the homicide in the same light they were viewed by the defendant. Without it they could not know, as the defendant did, the settled, determined, and deadly character of the deceased's hatred toward him, and the true cause of that hatred. This testimony throws light, not only upon the motive actuating the deceased in attacking the defendant, but upon the conduct of the defendant upon that occasion, and the motive which actuated him to kill the deceased. It tends to show that he had reasonable ground to apprehend that the attack made upon him was intended by the deceased to be a deadly one. It gives character to the threats, motive, and conduct of the deceased toward the defendant, and also to the motive and conduct of the defendant. [Russell v. State, 11 Texas Ct. App. 288.] We hold that the court erred in rejecting the testimony set forth in defendant's Bill of Exception No. 1.''

In Russell v. State, cited in the Ball case, supra, it was said: ''But let us return to the reason of the rule which admits these remote facts—facts which do not properly constitute the *res gestae* of the main fact, but are clearly admissible to elucidate the main or a relevant fact. Why are they admissible? The answer to our mind is very evident. The issue being: 'had the defendant reasonable grounds for fearing death or serious bodily harm?', to decide this question correctly, the exact relations of the parties to one another, their feelings toward each other and their motives should be known by the jury. These being understood, an act, gesture or word which was spoken or done at the homicide, is viewed and weighed in the light of these remote relevant facts, as well as the immediate facts. These immediate facts are not only seen in the light of their surroundings, but are weighed and passed upon under the rays emanating from

light drawn from facts occurring prior to, and sometimes great distances from the time and place of the homicide. An illustration here, we think, is proper. A and B are in an altercation. B throws his hand behind him to his hip pocket. A shoots and kills him. The quarrel and act of B constitute all of the immediate facts attending the killing. The killing under the circumstances would be thought, by an honest jury, a wanton and unprovoked murder. That to shoot down a fellow man because he merely put his hand behind him, or in his pocket, was simply an outrage upon humanity as well as law. But, suppose that B had been breathing out threats against the life of A—had been the aggressor in a number of difficulties with him, in which he had shown himself a violent and dangerous man, and so on—this apparent harmless movement of the hand, viewed in the light of these facts (though not occurring at the time), assumes quite a different shape and proportions. It is not that accidental or insignificant thing as was supposed when seen in the light of the facts which immediately attended it; but may be pregnant not only with apparent but actual danger to the life of A. The admissibility of a fact is quite a different thing from its sufficiency. We are passing upon its competency, not its weight or conclusiveness—this is the work of the jury. These remote facts, to-wit, the threats, difficulties and affrays, being of so much importance, then their character should be thoroughly understood by the jury. If they were not serious the apprehensions of defendant would not be so well founded; but if they were grave his fears would be found reasonable; hence, to determine the gravity, all of the facts—the threats, the manner, the pressure, the occasion—in fact, every thing done by the parties, or any other person, tending to show the character of these threats, difficulties and affrays, should be presented to the jury."

In Gafford v. State, 122 Ala. 54, l. c. 61, it was said: "The defendant offered to introduce proof of an adulterous relation between deceased and his sister at the time of and before the homicide, as well as specified acts of

adultery on their part, but the court refused to admit the testimony so offered, and to this action of the court the defendant excepted.'' Then after quoting from several cases, the court states its conclusions as follows:

''We cannot avoid the conclusion, in the light of the foregoing authorities, and that portion of the evidence tending to show that deceased was the aggressor, with a deadly weapon, that the exclusion of the testimony offered by defendant as to deceased's relations with defendant's sister, deprived the jury of proof which, if admitted, might in their opinion have shed light upon the main inquiry in the case, and as to which testimony before them was so hopelessly conflicting.

''It was proved, without contradiction, that defendant and deceased went on Saturday before the Monday of the killing, in the presence of deceased's father, that a satisfactory interview was had between them as to the rumors affecting deceased and defendant's sister, and that the two parted with repeated friendly shaking of hands. Notwithstanding this, it is further shown, without conflict, that on the morning of the day of the killing deceased sent a hostile and deadly message to defendant, and the two met in the public road in the afternoon of that day, both armed with deadly weapons. Under these circumstances, and in the absence of the offered testimony, and with deceased's denial of his unlawful relations with defendant's sister before the jury, the jury would naturally look in vain for any motive that might have impelled the deceased to become the aggressor under such circumstances, and might have reasonably inferred that his pistol was drawn, if drawn at all, for defensive purposes against the defendant, who is shown to have had, at the time, a double-barrel shot-gun in his hands. With no facts before them to illustrate the character of deceased's threats of that day, or furnishing an inference for a motive on his part to attack defendant, the jury could not, under such circumstances, have reached any other conclusion than that they did reach, viz., that the defendant was the aggressor. But if it had been shown to

them that, notwithstanding deceased's denials to defendant of improper relations between deceased and defendant's sister, such relations in fact existed then, and had existed for a considerable length of time previously, it may well be that the jury from their knowledge of human nature and the history of like cases, might, in the light of such testimony, have inferred a motive on deceased's part to remove a dangerous obstacle out of the way of his illicit enjoyment. However that may be, such testimony would have shown the cause of the enmity of the deceased towards the defendant, its intensity, and would have tended to show a reasonableness of defendant's apprehension of danger of death or serious bodily harm from the attack made upon him by deceased, if the jury should believe that such an attack was made. We are at all events persuaded that with the testimony referred to before them, the jury would have been enabled to balance more justly the substantial merits of the question of self-defense by reason of a fuller and juster apprehension of the defendant's real position at the critical moment of the fatal encounter, and the real state of feeling then existing on the part of each. . . . Our conclusion upon the question of the admissibility of the testimony offered by the defendant to show an adulterous relation between the deceased and defendant's sister, and defendant's knowledge thereof, is, that the circuit court erred in excluding it, and that its exclusion is reversible error.''

In State v. Thomas, 169 Iowa, 591, defendant offered to show by a witness that said witness had seen deceased caressing and hugging defendant's wife and had reported such fact to the defendant. The trial court excluded such proffered testimony. The Iowa Supreme Court said: ''The rulings were erroneous. The evidence in behalf of the State made out a prima-facie case of unprovoked murder. To meet this a plea of self-defense was interposed, in support of which defendant had testified that deceased, after applying to him opprobrious epithets, assailed him with a sword and that he discharged his revolver to save his own life. The evidence tendered tended

to establish the existence of a hostile motive in the mind of deceased and to show the apprehension of increased or greater danger in that of appellant. Without such evidence, the jury could not know as the defendant did the attitude of deceased's mind toward him nor would they be in a situation to view the acts of deceased from his viewpoint. Such testimony would have thrown light upon the motive or purpose actuating deceased in what he said or did and also upon the conduct of the defendant upon the occasion and the motive which actuated him in killing the deceased. The phase of the evidence adduced by defendant having presented a case of self-defense, it was competent for him to go farther and with this as a predicate, strengthen it by showing that deceased by his own previous conduct, whatever that might have been, if it had such tendency, not only evidenced an evil purpose toward defendant, but that defendant was aware of this, and was likely in their relations one with the other to have that in mind when dealing with him. The principle hardly requires precedent for its support, but in Gafford v. State, 122 Ala. 54, the precise question arose.''

In the case before us the trial court excluded the evidence tending to show the alleged lascivious approaches of Conger toward defendant's wife upon the supposed authority of State v. Stewart, 278 Mo. l. c. 191. The learned Attorney-General now relies upon that case. The language there used that ''evidence of an adulterous relation, in a case of the character of that at bar, is only admissible when the discovery of the same by the aggrieved spouse is so near the homicide as to afford no time for the passions thus inflamed to cool,'' if it could be said to apply where self-defense is an issue, is broader than required by the question there being discussed. But it is evident from the opinion that the admissibility of such evidence was being considered only in so far as it might afford a mitigating circumstance in the commission of the crime and not as evidence tending to show justification. Although there was evidence in that case which clearly justified the instructions given upon self-defense,

312 Mo. Sup.—44.

the language used was not employed, and evidently was not intended to be employed, in that connection, nor in any discussion of the law of self-defense. The language so used cannot be regarded as determining the question of admissibility of that character of testimony upon the resonableness of defendant's apprehension in that case, nor upon the issue of who was the aggressor in the fatal encounter which occurred in that case. The Stewart case is therefore no authority for the State's contention here.

State v. Stewart, 296 Mo. 12, l. c. 19, which was the same case upon second appeal, is also cited as authority for the contention of inadmissibility of this character of proof. There is nothing in that case which supports the State's contention. The only reference to the evidence touching improper relations between defendant's wife and the deceased was to show that there was some basis in the record to justify the giving of an instruction which had been approved upon the first appeal.

State v. Privitt, 175 Mo. 207, is cited as authority that the proffered testimony was properly excluded. The case is not in point. There was no self-defense in that case. The instruction there held not to be reversible error told the jury that the discovery of adulterous relations between deceased and his wife would not reduce the guilt from murder to manslaughter, unless defendant caught his wife and the deceased in the act or discovered the relation so shortly before the homicide that sufficient time had not elapsed for his passion to subside. That is a far different question from that of the admissibility of proof of an adulterous relation where there is evidence of self-defense and such proof is offered as tending to show the reasonableness of defendant's apprehension of danger and for the purpose of aiding the jury in determining who was the aggressor.

The same considerations dispose of the authoritative value of State v. France, 76 Mo. 681, cited by the State. The cases of Collins v. Todd, 17 Mo. 537 and Coxe v. Whitney, 9 Mo. 531, cited by the State, were civil actions in damages for assault and battery. The discussions of pre-

vious bad feeling and opprobrious epithets found therein were upon the admissibility of such evidence in mitigation of damages.

In State v. Vest, 254 Mo. 458, the defendant shot and killed deceased after having been told by his wife of an attempted sexual assault upon her by deceased. Apparently the facts were all before the jury. The trial court did not instruct upon manslaughter. Although the failure to so instruct was urged as error, the judgment was affirmed. The discussion of the evidence, which tended to show that deceased attempted to force defendant's wife to submit to his desires, was as to its effect upon the right of defendant to have the jury instructed upon the law of manslaughter. While there was evidence having some tendency to show self-defense, the admissibility of such testimony as bearing upon that 'defense was not considered. The case therefore does not support the contention of the State made here.

In State v. Jones, 78 Mo. 278, cited by the State, the instruction approved told the jury that the fact that deceased had been guilty of adultery with defendant's wife did not justify defendant in seeking out deceased and killing him and that such conduct did not excuse or mitigate defendant's crime, if sufficient time had elapsed after defendant had been informed of such conduct for his blood to cool. Like the Privitt and France cases, supra, this case does not support respondent's contention.

Like the Collins and Coxe cases, supra, the case of Endicott v. Robertson, 244 S. W. 947, was an action in damages for assault and battery. The Kansas City Court of Appeals held that the whipping of defendant's child by plaintiff at school three days before the assault was not sufficient provocation to be admitted in mitigation of damages. It is not an authority for the contention that the proof here being considered was not admissible for the purpose for which it was offered.

The note to 16 A. L. R. 825, cited by respondent, treats of cooling time after provocation given and adds nothing to the Missouri cases we have discussed.

We are well aware of the far-reaching effect of holding that testimony of this character is admissible where there is evidence of self-defense in order to aid the jury in determining who was the aggressor and in reaching a conclusion as to the reasonableness of defendant's apprehension of danger at the hands of his adversary. It might be said that the admission of such testimony will open the door to perjury in homicide cases and compel the jury to consider and determine collateral issues. All this may be true, and yet constitute no sufficient reason why the jury should not have before it all testimony which tends to shed light upon the all-important questions of who was the aggressor and whether defendant's cause of apprehension of danger was reasonable under the circumstances, where the jury has to determine whether the accused acted in self-defense when he committed the assault or homicide. It is probably needless to say that when such testimony is permitted to go to the jury, whether admitted as tending to show that the killing was manslaughter rather than murder or as tending to show who was the aggressor and the reasonableness of defendant's apprehension of danger where a plea of self-defense is interposed, the trial court should instruct the jury concerning the purpose for which such testimony is admitted and caution the jury to limit its consideration thereof to such purpose only.

We are satisfied upon reason and upon precedent that the trial court should have permitted defendant to make the proof offered. The exclusion of such testimony was error. Its exclusion doubtless resulted most prejudicially to the defendant.

Under the facts permitted to go to the jury, the language used in Russell v. State, supra, is very appropriate: "The killing under the circumstances would be thought, by an honest jury, a wanton and unprovoked murder. That to shoot down a fellow man because he merely put his hand behind him, or in his pocket, was simply an outrage upon humanity as well as law." All the jury in the case at bar knew from the evidence permitted to be submitted to

it was the bare fact of a meeting between two strangers upon the public street. One of them, without satisfactory proof of any act or conduct upon the part of the other justifying a reasonable apprehension of danger, draws a pistol and shoots down the other who was an unarmed and, so far as the evidence discloses, an unoffending citizen. True, there was some evidence of a message sent by defendant to Conger, but its nature and purpose were not disclosed to the jury. An honest jury, mindful of its duty, under the evidence submitted to it and the instructions based thereon, could not do otherwise than find that the assault was without justification. The jurors could not properly go outside of the evidence and the instructions and draw upon their imaginations to supply the all-too-evident gap in the proof which would have shed a flood of light upon defendant's conduct. Without having the proffered testimony before it, or, in its absence, without drawing upon their imaginations to supply it, the jury could not possibly have found, under the evidence heard by it, any justification whatever for the conduct of defendant in shooting Conger. With such testimony before it, the jury would be in a position to judge accurately and justly of the reasonableness of defendant's apprehension of danger. If the jury believed that Conger had made indecent advances toward defendant's wife and that defendant was informed thereof and had sent word to Conger to desist therefrom and that Conger was thus advised of defendant's knowledge and that defendant also knew that Conger was aware of his knowledge, a veritable flood of light is at once thrown upon conduct and actions which before were inexplicable and unnatural. A movement made by either man under such circumstances might well be considered as hostile and as affording a basis for reasonable apprehension of danger which, under other and more normal and less strained circumstances, would not and could not reasonably be regarded as hostile or as affording the slightest ground for apprehension of danger.

The error in excluding the proof offered makes a new trial necessary. The same considerations show that the trial court should have permitted defendant to prove the reasons for his wife's fears, which he offered to show as the reason for purchasing the pistol and taking it out into the country to engage in practice with it and to familiarize his wife with its operation. Unexplained evidence of the possession of this deadly weapon at the time and place of the shooting doubtless materially influenced the jury in its finding that the shooting was done maliciously.

There are other assignments of error made in the brief of defendant. They are clearly of such character that the same questions will not arise upon a retrial and need not be considered.

For the error in excluding testimony offered by defendant the judgment is reversed and the cause remanded for another trial. All concur.