**STATE of Missouri, Plaintiff–Respondent,**

v.

**Tommy Lee JORDAN, Defendant–Appellant.**

No. 20817.

Missouri Court of Appeals,
Southern District,
Division 1.

Nov. 15, 1996.

Motion for Rehearing or Transfer
to Supreme Court Denied Dec. 4, 1996.

Application to Transfer Denied
Jan. 21, 1997.

Lee H. Bushie, John D. Beger, Rolla, for defendant-appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Cheryl A. Caponegro, Assistant Attorney General, Jefferson City, for plaintiff-respondent.

GARRISON, Judge.

Tommy Lee Jordan (Defendant) was convicted of first degree murder, § 565.020.1, and armed criminal action, § 571.015, RSMo 1994, for which he received sentences of life, without eligibility for parole, and twenty-five years, respectively.

Rick Brown (decedent), who lived in Kansas City, was previously married to Defendant's wife, Kari, and was the father of her three-year-old son (C.B.). Defendant lived near Eminence, Missouri, with Kari, C.B., and Kari's daughter.

Decedent was scheduled to pick up C.B. on December 31, 1994 to exercise visitation privileges. When decedent arrived that morning at an apartment in Eminence where his girlfriend was staying, however, Defendant was waiting to tell him that he could not take C.B. According to Defendant, when he did so, decedent screamed that Defendant was going to die and started opening a shaving kit he was carrying. Defendant testified that he reached into his truck for a gun after pushing decedent to the ground and knocking the shaving kit from his hands. When he looked back, he saw that decedent was still on the ground but was turning to point a pistol at him.[1] He said that he then shot decedent three times while he was on the ground and once after he got up. Decedent died as a result of the wounds he received.

At Defendant's request, the trial court instructed on self-defense. In this appeal from his convictions, Defendant challenges the trial court's exclusion of evidence which he says indicated that decedent had been sexually abusing C.B., and its admission of evidence concerning his prior arrest for DWI. We affirm.

In his first point on appeal, Defendant alleges error because the trial court sustained the State's motion in limine and rejected his offer of proof concerning evidence that decedent had sexually abused C.B., an allegation which he says he communicated to decedent both before and at the time of the occurrence in question.[2] In support, he contends that (1) when self-defense is an issue, all circumstances under which the homicide occurred are admissible, which would "throw light upon the transaction as it presented itself to [him], or could have affected him in his actions or apprehensions of danger"; (2) the evidence would have assisted the jury in deciding the veracity of Defendant's testimony about the decedent's actions and whether he would have reacted in an aggressive manner; and (3) the evidence was relevant to Defendant's state of mind. As we understand the premise of Defendant's point, it is that decedent would be expected to react violently if he had been told that Defendant had discovered decedent's conduct with his son and was going to expose it.

In support of this contention, Defendant relies primarily on *State v. Burns*, 312 Mo.

---

1. There was evidence that, following the shooting, no pistol was found at the scene which could be linked to decedent.

2. The only evidence referred to by Defendant in support of his contention that he communicated these allegations to decedent before the day of the shooting is his offer to prove that he made comments to decedent's father. There was no evidence, however, that these statements were ever communicated to decedent.

673, 280 S.W. 1026 (1926), a case in which the defendant was convicted of assault with intent to kill. The evidence was that the victim was approaching defendant and his wife on the street; the victim had his hands in his pockets, and had an insolent attitude and "queer" look; and the defendant shot the victim when he saw his hands move and presumed he was about to draw a weapon. The trial court, however, had excluded evidence that the victim had earlier made improper advances toward the defendant's wife which she reported to defendant, and that defendant had sent a third person to the victim to demand that he stop such conduct. The supreme court described the issue as whether the excluded evidence should have been admitted as tending to explain the defendant's conduct when he shot the victim, to aid the jury in deciding who was the aggressor, and in determining the reasonableness of defendant's fear. *Id.* 280 S.W. at 1029. It held that the exclusion of that evidence was reversible error. *Id.* 280 S.W. at 1033.

Factually, the instant case is distinguishable from *Burns*. Here, the jury heard other evidence of hostility between decedent and Defendant, including conduct and statements by decedent which Defendant understood to be threats that he would be shot. Defendant testified that he and Kari started living together before her marriage to decedent was dissolved, and hostility apparently developed between him and decedent over the next several months. At one point, Defendant was injured in a motorcycle accident and was told by a friend that decedent had said that he (decedent) was going to finish Defendant off with a lead pipe.

Defendant also testified about a phone conversation when he told decedent that he could not take C.B. to his home in Kansas City for extended visits unless he used a licensed day care center, whereupon decedent said, "I'll pop a cap in your a__ over this." Defendant said he interpreted that as meaning decedent was going to shoot him. He also testified about an incident following a visit by himself, decedent and C.B. to a psychologist's office in which decedent "pointed at me and went bang, bang, bang, and then he drove off." This evidence alone

may have been sufficient to demonstrate the animosity allegedly harbored by the decedent so that the exclusion of the evidence referred to in this point, even if error, may be considered harmless. *See State v. Malone,* 39 S.W.2d 786, 789 (Mo.1931).

■ Although Defendant includes the granting of the State's motion in limine in his allegation of error, we note that the granting of such a motion is interlocutory only and does not, in itself, raise an issue for appeal. *State v. Purlee,* 839 S.W.2d 584, 592 (Mo. banc 1992). When a motion in limine is granted, the proponent of the evidence, in order to preserve the issue for appellate review, must attempt to present the excluded evidence at trial, and if an objection is sustained, must make an offer of proof. *Id.*

Defendant made an offer of proof concerning evidence of decedent's sexual abuse of C.B., which was rejected by the trial court. Included was the testimony of Defendant, Kari, and her parents, presented out of the hearing of the jury. Kari's parents testified about changes they noticed in C.B.'s behavior after having been with decedent, including anger and clinging to Defendant and Kari. Kari testified that after decedent's visitations, C.B. could not sleep, he had nightmares, he would hide when he heard cars, and he became angry. She also said that when she would change C.B.'s diaper he would cover his penis and say "don't bite," and that he also stuck "his finger up his hind end and said it hurts."

Defendant also testified as part of his offer. He said that when he was changing C.B.'s diaper after his first visit with decedent, C.B. "covered up himself and said, don't bite pee pee, Da." C.B. said the same thing on other occasions and would point at his rectum and say "hurt, Da, hurt." He also said that he asked C.B. who was biting his "pee pee" and he said "Rick is, Da." Defendant said that convinced him "that there was something going on that shouldn't have been going on," and that was "the reason [he] went to confront [decedent] that morning then, to stop the visitation."

■ An offer of proof should be specific and in sufficient detail to demonstrate the

admissibility of the excluded evidence. *State v. Townsend,* 737 S.W.2d 191, 192 (Mo. banc 1987); *see also State v. Dixon,* 668 S.W.2d 123, 126 (Mo.App.S.D.1984) (an offer of proof must demonstrate that the excluded evidence is relevant and material). Defendant's contentions under this point all hinge on the communication to decedent of his beliefs about decedent's conduct with C.B. He argues:

It is this type of evidence, that deceased had a motive in acting aggressively toward him, that Appellant sought to introduce. Specifically, that Appellant suspected decedent of sexually abusing [C.B.] and he was going to pursue it by taking [C.B.] to a psychiatrist. Under those circumstances, the jury could infer decedent would react in an aggressive manner towards Appellant, especially if Appellant's suspicions were true, in which case it could be expected decedent might react in a deadly manner to try to conceal his improprieties with his infant son.

The excluded evidence about which Defendant complains, however, does not establish that he ever communicated these allegations to decedent. In his offer of proof, Defendant testified as follows:

Q. In your own mind, was that, did that convince you that there was something going on that shouldn't have been going on?

A. Yes, and this—

Q. Is that the reason you went to confront Rick that morning then, to stop the visitation?

A. Yes.

While Defendant testified in his offer that the *reason* he went to meet decedent the morning of the shooting was to stop the visitation because of what he believed, he did not say that this was told to decedent. Later, in Defendant's offer, he testified:

Q. The confrontation down here that morning between you and Rick Brown, did he admit to this molestation to you?

A. He said, I can do with my kid on my time whatever I want to.

This was not evidence that Defendant had actually communicated his accusations to decedent. By this question, Defendant's counsel apparently sought to create an inference that such an accusation had been made. Defendant's answer, however, was not responsive to the question as phrased. We do not construe this answer as constituting evidence that Defendant actually confronted decedent with allegations of sexual abuse. It certainly does not require a reversal on the basis argued by Defendant.

It is significant to note that the trial court did not preclude Defendant from testifying about what he told decedent. At trial, the State objected when Defendant started to testify about what he told decedent on the morning of the shooting, anticipating that Defendant was going to testify that he accused decedent of sexual abuse. The prosecutor argued that sexual abuse did not relate to the Defendant's fear of the decedent. In response to the objection, Defendant's counsel stated that Defendant was going to testify that "he confronted the deceased with the fact that, that I know that you've sexually molested these kids,"[3] and theorized that that was why decedent made an attempt to kill Defendant. Defendant's counsel also argued that the decedent's reaction to this accusation was what triggered the self-defense.

The trial court, rather than preventing Defendant from testifying about what he told decedent, said, "I'm going to let him answer the question once, but I don't want you dwelling on it." The court also said, "... I'm going to overrule the State on this and let you elicit what was said, but limit it to one time, if you can." The following then occurred:

(Defendant's counsel): Now, tell the jury what happened then when [decedent] came up to you.

A. I said, Rick, I know what you've been doing to [C.B.]. I know what you have done to [M.]. You're not going to get [C.B.] this weekend and I'm taking the kids to a psychiatrist to get proof next week.

3. Defendant apparently contended that decedent had also abused Kari's daughter.

(Defendant's counsel): What happened after that?

A. He screamed at me, you're not going to do nothing but die, MF, and he had a shaving kit. He started opening the shaving kit. I reached out and slapped the shaving kit down. He went for the shaving kit, I nudged him, pushed him. He went on down to the ground. I turned back to my truck, got my gun out, spun around with it in one hand. He was on the ground. He had a gun out, a little automatic. He turned to shoot at me and he hit his left arm while he was still on the ground. I said, Rick, no. He went ahead coming up and around with it and I fired three times from my side. At that time he stood on up and pointed away from me, headed away from me, and I shot one more time. At that time he took two or three, four more steps and fell down.

(Defendant's counsel): Were you in fear?

A. He was going to shoot me. Yeah, I was in fear. I was surprised at him a yelling at me like he did and, yes, I was in fear.

There is no indication that the trial court prevented Defendant from testifying that he accused decedent of sexually abusing C.B. To the contrary, the trial court permitted Defendant to answer the open-ended question about what he told decedent that morning after being informed by his counsel that he was going to testify that he accused the decedent of sexually molesting C.B. Defendant did testify that he told decedent he knew what he had been doing to C.B., and that he was going to get proof. Defendant was not restricted by the court in answering the question, and if the accusation had included a specific reference to sexual abuse, he could have said so. We are unable to conclude that the trial court erred as alleged by Defendant.

Another reason why Defendant cannot be heard to complain about the exclusion of this evidence, as it related to his theory of self-defense, appears in the record of the Rule 29.07(b)(4) hearing held by the trial court immediately after sentencing. Defendant's present counsel appeared on his behalf to argue the motion for new trial and represented him at sentencing, including the Rule 29.07(b)(4) proceeding which followed.[4] Defendant's counsel was permitted, at his request, to interrogate Defendant in connection with the inquiry under Rule 29.07(b)(4), at which time Defendant testified, under oath, as follows:

(Defendant's counsel): Do you remember when I first met you in the jail?

A. Yes.

Q. And do you remember what I told you I wanted to hear?

A. You wanted to hear the truth.

Q. And did I tell you that at some point in these proceedings you would be expected to take the stand, whether that be at a new trial or here today as you are doing?

A. Yes, you did.

Q. And did I tell you you would have to tell the truth then?

A. Yes, sir.

Q. Do you remember testifying at your trial?

A. Yes.

Q. And testifying that you shot Rick Brown in self-defense?

A. I remember testifying that, yes.

Q. Was that the truth?

A. No.

Q. You did not shoot Rick Brown in self-defense?

A. No.

Q. Could you tell us, please, why it was that you shot Rick Brown?

A. I shot Rick Brown because he had molested [M.], his six year older sister. He was molesting [C.B.] and because of him and his dad getting into it and I got the phone call the night before, I thought [C.B.] would be molested that day again.

Q. Unless you did something?

A. Unless I got it stopped.

Defendant claimed that his trial counsel told him that justifiable homicide or defense of a third person was not a viable defense because he had not actually seen decedent

---

4. Defendant's present counsel did not represent him at trial.

molesting C.B. He also claimed that trial counsel told him that in order for them to use self-defense in defending the case it would be necessary for him to testify that he saw decedent with a gun. He testified that, although he told his trial counsel what actually happened, his attorney said, "you can't say that," and that he testified at trial as he did because of his attorney's statements.

On cross-examination by the State, Defendant said:

(The Prosecutor): Mr. Jordan, then do you admit here in open court that you committed perjury when you testified before?

A. Yes, sir, I do.

Defendant's counsel later argued to the trial court that the evidence presented after sentencing was in support of his claim of ineffective assistance of counsel. He contended that Defendant's trial counsel was ineffective because if he had permitted Defendant to testify truthfully (that he killed decedent to protect C.B.), the evidence about the molestation of C.B. would have been admissible.

■ Notwithstanding the reasons for presenting this evidence to the trial court in connection with the Rule 29.07(b)(4) inquiry, we are faced with a claim of error based primarily on the theory that the excluded evidence was admissible in connection with Defendant's theory of self-defense. Defendant, however, has voluntarily testified under oath that this theory of defense was fabricated and based on perjured testimony. He therefore asks us to find reversible error based on the validity of a defense which he admits was inapplicable. To do so would constitute a perversion of the appellate process.

Defendant argues that the Rule 29.07(b)(4) inquiry is distinct from the criminal case itself and is for the limited purpose of ascertaining whether probable cause exists to find that he received ineffective assistance of counsel. In support, he cites *State v. Hurtt*, 836 S.W.2d 56 (Mo.App.S.D.1992). This court, in *Hurtt*, acknowledged that the Rule 29.07(b)(4) inquiry is to assist a defendant in providing a remedy if representation has been ineffective, and that an inquiry by the court in that proceeding does not violate a defendant's Fifth Amendment right not to testify against himself. *Id.* at 61. There, however, we held that a defendant's responses to such an inquiry can be considered in weighing his subsequent testimony concerning the ineffectiveness of his counsel. *Id.*

*Hurtt* cannot be stretched to support the argument, which Defendant in effect makes here, that his conviction should be reversed based on the exclusion of evidence which he contends was relevant to his theory of defense, even though he voluntarily admitted in the Rule 29.07(b)(4) hearing that that defense was based on perjury.

■ An admission by a defendant in a postconviction proceeding that he lied to the court in connection with the criminal case is evidence of fraud upon the court. *Foster v. State*, 593 S.W.2d 636, 639 (Mo.App.E.D. 1980). As indicated in *Garner–Roe v. Anderson*, 894 S.W.2d 223, 227 (Mo.App.E.D. 1995), our courts will not condone conduct which constitutes such a fraud. This conduct is not excused, as Defendant seeks to do here, by his allegation that it was a response to what he understood his trial counsel said about the law of self-defense.

Defendant's first point is denied.

In Defendant's second point, he alleges that the trial court erred in admitting evidence that he was was previously arrested for driving while intoxicated, which, he argues, was evidence of other crimes and was not probative evidence concerning the offense charged. The evidence in question was that Defendant was arrested at approximately 11:40 P.M. on December 28, 1994 (less than three days before the shooting in question) within two to two and one-half miles from decedent's residence in Kansas City, which was approximately 300 miles from Defendant's residence in Eminence. When he was arrested, he had four loaded firearms on the passenger seat next to him, each of which had a live shell in the chamber, and he also had additional ammunition in the car. When he was asked what he was doing with the guns, Defendant first said that he was going to visit a friend in Kansas City and that he brought them for protection because he had heard it was a "rough place." Defendant later told the same arresting officer that he had brought the guns to Kansas City to sell,

but when asked why he had a shell in the chamber of each, he said that he was from Eminence where they keep all of their guns loaded. When asked the amount he wanted for the guns, Defendant said, "well, I can't sell them right now." He said, "I've got to use them first" and "then I'll sell them." He refused to answer any additional questions when asked what he was going to use them on.

■ Evidence of a separate, distinct and unrelated crime is generally inadmissible unless the evidence has a legitimate tendency to establish a defendant's guilt of the crime charged. *State v. Henderson*, 826 S.W.2d 371, 374 (Mo.App.E.D.1992). Evidence of a separate offense is admissible if it tends to establish motive, intent, absence of mistake or accident, a common scheme or plan, identity, or the *res gestae. Id.*

A trial court has broad discretion in determining whether to admit or exclude evidence, and we will not interfere with its ruling in the absence of a clear abuse of that discretion. *Id.* It is in the best position to evaluate whether the potential prejudice from relevant evidence outweighs the relevance. *State v. Kenley*, 693 S.W.2d 79, 81 (Mo.banc 1985).

■ In the instant case, the fact that Defendant was arrested for DWI was merely a circumstance surrounding the evidence which was relevant to Defendant's intent to kill decedent, to wit: having several loaded firearms with him, 300 miles from his home at 11:40 P.M., within two and one-half miles of decedent's residence, less than three days before he actually shot decedent, together with the officer's testimony that he said he had to use the firearms before he could sell them.

The trial court did not abuse its discretion under these facts. Defendant's second point is denied.

The judgment is affirmed.

BARNEY, P.J., and PREWITT, J., concur.