**STATE of Missouri, Plaintiff–Respondent,**

v.

**Eubert G. LLOYD, Jr., Defendant–Appellant.**

No. 26737.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 27, 2006.

Douglas A. Forsyth, St. Louis, MO, for Defendant–Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Asst. Atty. Gen., Jefferson City, MO, for Plaintiff–Respondent.

JEFFREY W. BATES, Chief Judge.

In August 2002, Eubert Lloyd (Defendant) was charged by information with committing the class B felony of manufacturing a controlled substance in violation of § 195.211 by growing more than five grams of marijuana.[1] The original information was later amended to allege that Defendant was a persistent offender. *See* § 558.016.3. During the trial, the court found Defendant to be a persistent offender beyond a reasonable doubt. A jury convicted Defendant of the charged offense, and the trial court determined punishment. *See* § 557.036.4(1). Defendant received an enhanced sentence of 30 years in prison. *See* § 558.016.7(2). Defendant presents four points on appeal. He contends the trial court erred in: (1) excluding hearsay evidence relating to Defendant's state of mind concerning the growing of marijuana on his property; (2) not acting *sua sponte* to remedy alleged prosecutorial misconduct during cross-examination and closing argument; (3) excluding evidence that other marijuana was

---

1. All references to statutes are to RSMo (2000). All references to rules are to Missouri Court Rules (2006).

discovered on Defendant's property five months after he was arrested; and (4) denying Defendant's motion to suppress. We affirm.

Defendant does not contest the sufficiency of the evidence to support his conviction. "We consider the facts and all reasonable inferences derived therefrom in a light most favorable to the verdict, and we reject all contrary evidence and inferences." *State v. Campbell*, 122 S.W.3d 736, 737 (Mo.App.2004). We have applied this standard in summarizing the facts set forth below.

Defendant and his wife, Sheena Lloyd (Sheena), owned a 180–acre farm in Crawford County, Missouri. They lived in a house on the premises along with Sheena's son, D.J. Sergeant Richard Lisenbe (Lisenbe) worked for the Missouri State Highway Patrol in the marijuana eradication unit. On June 20, 2002, he and other officers went to Defendant's farm. In a forested area behind the barn, officers found a cleared patch containing two cultivated marijuana plants. In another wooded area about two hundred yards from the front entrance to Defendant's house, the officers found a second cleared patch containing 228 cultivated marijuana plants. Lisenbe left Defendant's premises and obtained a warrant to search Defendant's home and outbuildings.

Defendant and Sheena were at home when the warrant was executed the following day. D.J. had left two or three weeks earlier to spend the summer with his grandparents. In a red shed about 70 feet from Defendant's house, officers found an indoor marijuana-growing operation.

They observed two stacks of bricks with a blanket over the top. Underneath the blanket, there were growth lights suspended over 72 starter pots containing marijuana seeds. A fan was pointed into the growing area to keep it cool. The shed also contained black buckets, potting soil and fertilizer. Just behind this shed, officers located 25 starter marijuana plants in styrofoam cups. In another nearby shed, more plant food and fertilizer were discovered in large white containers. In a small roofless enclosure, officers located more starter plants in styrofoam cups. In Defendant's barn, officers found enough water hoses to reach the large marijuana patch in the woods. From that patch, officers seized 228 plants.[2] Each plant would produce at least one pound of marijuana, which had a street value of around $1,200. The plants appeared to have been placed in holes dug with a post-hole auger and filled with potting soil and fertilizer. A tractor equipped with an auger was located in Defendant's yard. There was a worn patch connecting the house to the large marijuana field. In addition, officers seized the two plants from the smaller marijuana patch from the clearing in the woods behind the barn.

Defendant's two-bedroom residence was searched next. In the bedroom used by Defendant and his wife, officers removed plant food, a used pipe and some seeds or leafy material that appeared to be marijuana. In D.J.'s bedroom, officers removed a marijuana plant, a water pipe and a High Times magazine containing an article titled, "What to Feed Your Weed." In another part of the house, officers seized a bong, rolling papers, a machine to help roll

---

**2.** Lisenbe visually identified the plants as marijuana. Nearly all of the plants were burned, but Lisenbe removed 570 grams of leaves from several plants for laboratory analysis. The plant matter was confirmed to be marijuana by microscopic analysis, color testing and thin layer chromatography.

cigarettes, marijuana seeds, a set of portable scales and an electrical box containing a number of breakers that could be used to control circuits running to the outbuildings like the red shed.

Subsequent to the search, Defendant was charged with manufacturing a controlled substance by knowingly growing more than five grams of marijuana. Following Defendant's conviction of this offense, he appealed. Additional facts necessary to the disposition of the case are included below as we address Defendant's four points of error. For ease of analysis, we will address Defendant's points out of order.

### Point IV

■ Defendant's fourth point concerns the court's ruling on his pre-trial motion to suppress. In May 2003, Defendant filed a motion to suppress all evidence seized by officers during the search of Defendant's property on June 21, 2002. The motion alleged the search was invalid on various state and federal constitutional grounds. The hearing on the motion was held in March 2004. The parties agreed that the trial court could rule after examining the search warrant, Lisenbe's warrant application and affidavit, his deposition and the deposition of an Officer Little. In August 2004, the court made a docket entry denying the motion to suppress.

Trial commenced on August 25, 2004. The motion to suppress was not renewed at trial by defense counsel.[3] Furthermore, counsel did not secure, by stipulation or

ruling, the right to assert a continuing objection to any evidence seized by officers during the search of Defendant's farm based on the grounds asserted in the motion to suppress. Lisenbe was the State's first witness. During his testimony, 37 exhibits were admitted in evidence.[4] These exhibits included the pipe seized from Defendant's bedroom, two water pipes seized from Defendant's house and 34 photographs depicting other items that were observed and/or seized by officers during the search. Defendant's attorney stated that he had "no objection" to the admission of these exhibits. Lisenbe's testimony was devoted almost exclusively to identifying and explaining the significance of these 37 exhibits to the jury. At no point during Lisenbe's testimony did defense counsel assert any state or federal constitutional objections to these exhibits or Lisenbe's discussion of them.

The State's only other witness was Highway Patrol Crime Lab employee Darian Attebery (Attebery). She performed the laboratory analysis of the plant material contained in State's Exhibit 2. This exhibit had been identified by Lisenbe during his testimony as the plant leaves he had collected during the search of Defendant's farm. Attebery testified that these leaves, which weighed 570 grams, were marijuana. When the State offered Exhibit 2 in evidence, defense counsel stated that he had "no objection." Defendant asserted no state or federal constitutional objections to Lisenbe's identification of Exhibit 2, the admission of the exhibit itself or the conclusions Attebery reached after analyzing the leaves.

---

3. Defendant is represented by different counsel on appeal.

4. Exhibit 25 was identified by Lisenbe, but the prosecutor did not formally request that it be admitted in evidence. Nevertheless, the

exhibit was constructively admitted because it was used during the trial and published to the jury without objection by Defendant. *See, e.g., State v. Gott*, 191 S.W.3d 113, 115 n. 3 (Mo.App.2006).

After Defendant was convicted, counsel filed a motion for new trial. The motion contains no allegation that the trial court erred either by denying the motion to suppress or by admitting evidence seized by officers during the search of Defendant's premises.

■■■ Defendant's fourth point asserts that the trial court erred in denying the motion to suppress because the warrant was not issued upon adequate probable cause, thereby rendering the search of Defendant's property illegal. This point is defective because the only ruling it challenges is the court's decision to deny the motion to suppress. A pretrial ruling on a motion to suppress and the court's later decision to admit evidence at trial are two separate procedures. A trial objection to the admission of evidence challenged in a motion to suppress is required to preserve the issue for appellate review. *State v. Williams*, 9 S.W.3d 3, 11 (Mo.App.1999).[5] Consequently, the ruling on a motion to suppress generally cannot be asserted as a point of error on appeal. *Id.* "[O]rdinarily, a point relied on that refers only to a ruling on such motion is fatally defective."

*State v. Shifkowski*, 57 S.W.3d 309, 316 (Mo.App.2001). This rule attends because such a ruling is interlocutory and subject to change during trial. *Id.* "When a pretrial motion to suppress evidence is denied, the defendant must renew the objection or make a specific objection at trial when the evidence is presented to preserve the issue of appellate review. The trial court must be given the opportunity to reconsider its prior ruling against the backdrop of the evidence adduced at trial." *State v. Morrow*, 996 S.W.2d 679, 681–82 (Mo.App. 1999) (citations omitted). "Accordingly, a point relied on attacking the trial court's ruling on a pretrial motion to suppress, without attacking the court's ruling admitting the evidence, is deficient in that it does not identify the actual ruling that is subject to challenge and, therefore, does not preserve the issue for appellate review." *State v. Wolf*, 91 S.W.3d 636, 642 (Mo.App.2002).

■■■ We acknowledge that an unpreserved error in the admission of evidence that is the subject of a motion to suppress can, in some instances, be reviewed pursuant to Rule 30.20 for plain error.[6] *See,*

---

5. The preservation problem was compounded by the fact that Defendant's motion for new trial omitted any reference to the ruling on the motion to suppress or the admission in evidence of the items seized during the search of his farm. To preserve an evidentiary issue for appeal, there must be an objection giving the grounds at the time the evidence is sought to be introduced, and the same objection must be renewed in the motion for new trial. *See State v. Campbell*, 147 S.W.3d 195, 205 (Mo.App.2004); *Enos v. Ryder Auto. Operations, Inc.*, 73 S.W.3d 784, 788–89 (Mo.App. 2002).

6. Even if we were inclined to review this point on the merits, we would be unable to do so. When a motion to suppress is denied and evidence is introduced at trial, an appellate

court is required to consider the evidence presented both at the suppression hearing and at trial in determining whether the motion should have been granted. *State v. Goff*, 129 S.W.3d 857, 861–62 (Mo. banc 2004). In the case at bar, the motion to suppress was denied after the trial court reviewed the depositions of Lisenbe and Officer Little. Neither of those depositions has been included in the record on appeal. We have no way of knowing what additional information was included in these depositions which may have supported the trial court's decision to deny the motion to suppress. It was Defendant's duty to supply this Court with all of the record, proceedings and evidence necessary to determine the questions he asked us to decide. Rule 30.04(a); *State v. Brown*, 744 S.W.2d 809, 812 (Mo. banc 1988). Because Defen-

*e.g., State v. Eoff,* 193 S.W.3d 366, 375 (Mo.App.2006)Top of Form; *State v. Coyne,* 112 S.W.3d 439, 442–43 (Mo.App. 2003). This is not one of those instances. At trial, Defendant could have renewed his motion to suppress and obtained a continuing objection to any evidence that he contended had been illegally seized. *See, e.g., State v. Pike,* 162 S.W.3d 464, 472 (Mo. banc 2005); *State v. Christian,* 184 S.W.3d 597, 605 n. 1 (Mo.App.2006). Counsel did not do so. More importantly, he stated that he had "no objection" to the admission of the marijuana leaves, three pipes and 34 photographs depicting other items observed and/or seized by officers during the search of Defendant's farm. Counsel's announcement amounted to an affirmative waiver of appellate review of this evidentiary issue. *State v. Smith,* 185 S.W.3d 747, 758 (Mo.App.2006); *State v. Markham,* 63 S.W.3d 701, 707 (Mo.App.2002). Under such circumstances, "even plain error review is not warranted." *Markham,* 63 S.W.3d at 707–08. Accordingly, we deny Defendant's fourth point without reaching the merits of the various arguments he asserts.

## Point III

■ Defendant's third point challenges the exclusion of evidence that, approximately five months after he was arrested, additional marijuana was discovered in his house. Before trial, the State filed a motion in limine to exclude this evidence. The court sustained the motion on the ground that the evidence was irrelevant. At trial, defense counsel presented an offer of proof from the following witnesses: attorney Lauren Hill (Hill); Jeremy Cool (Jeremy); Karen Cool (Karen); Lori Boucher (Boucher); Danny Evans (Evans); and Peggy Mansker (Mansker).[7] This proffered testimony is summarized below.

Hill was Defendant's dissolution attorney. Before Defendant was released on bond, Sheena obtained an adult abuse order of protection against him. On December 5, 2002, Hill informed Defendant that an agreement had been reached allowing him to return to the farm. Jeremy accompanied Defendant to his farm. Jeremy climbed into the house through one of the windows and opened the door from the inside. He and Defendant checked on the house and the animals. The electricity had been turned off, and the house had been essentially stripped. There were no appliances in the kitchen, and the cabinets were bare. A couch and love seat had been left in the living room, but all of the rest of the furnishings were gone. Jeremy testified that he did not see any marijuana plants in the house during this trip. They locked the door and left. Defendant returned to the house two or three hours later with Jeremy, Karen, Boucher and Evans. Defendant drove alone in one car, and the others followed behind Defendant in another vehicle. Jeremy re-entered the house through the window. In one of the bedrooms, he and Evans found a couple of marijuana plants in styrofoam cups. The plants had been hidden underneath a lamp in the back bedroom closet. The police were called, and they came to the house

---

dant failed to do so, we would be required to presume that the depositions would be unfavorable to his argument on appeal. *State v. King,* 873 S.W.2d 905, 907 n. 3 (Mo.App. 1994).

7. Because two of the witnesses share the same last name, we use their first names for purposes of clarity. No disrespect is intended.

and confiscated the plants. Mansker testified that, at around the time of Defendant's arrest, she overheard a conversation involving D.J. and two other individuals that they had been growing and selling marijuana. D.J. also talked about smoking marijuana in Mansker's presence. Mansker said Defendant had not been to his residence since his arrest because of the "restraining order" against him. Karen similarly testified that Defendant did not return to his house at any time when she was with him. She admitted, however, that she had only known Defendant since August 2002 and that she had not been with him 24 hours a day. Following the offer, the court adhered to its earlier ruling that the proffered evidence was irrelevant.

In Defendant's third point, he contends the trial court abused its discretion in excluding relevant evidence that marijuana was being grown at Defendant's residence five months after he was arrested. A trial court is vested with broad discretion in determining the relevance of proffered evidence. *State v. Walton*, 166 S.W.3d 95, 101 (Mo.App.2005); *State v. Wilson*, 105 S.W.3d 576, 582 (Mo.App. 2003). "Evidence is relevant when it tends to confirm or refute a fact in issue, or corroborates evidence that is relevant and pertains to the primary issue in the case." *Wilson*, 105 S.W.3d at 582. Irrelevant or immaterial evidence, on the other hand, tends to draw the jurors' attention away from the issues they must decide. *State v. Comte*, 141 S.W.3d 89, 91 (Mo.App.2004). Refusing to admit such evidence is not error. *Id.* Moreover, the trial judge is in the best position to evaluate whether the probative value of proffered evidence outweighs its prejudicial effect. *State v. Oplinger*, 193 S.W.3d 766, 770 (Mo.App. 2006).

Defendant claims the excluded evidence was relevant to prove that, without Defendant's knowledge, "marijuana was being grown by another person on the premises, before and after Defendant's arrest." We are unable to agree.

It is well-settled that "[e]vidence which has no other effect than to cast bare suspicion on another is not admissible." *Helmig v. State*, 42 S.W.3d 658, 671 (Mo.App.2001). Defendant's proffered evidence was not relevant unless it directly connected a specific person other than Defendant to the crime of manufacturing marijuana on June 21, 2002.

> To be admissible, evidence that another person had an opportunity or motive for committing the crime for which a defendant is being tried must tend to prove that the other person committed some act directly connecting him with the crime. The evidence must be of the kind that directly connects the other person with the *corpus delicti* and tends clearly to point to someone other than the accused as the guilty person. "Disconnected and remote acts, outside the crime itself cannot be separately proved for such purpose; and evidence which can have no other effect than to cast a bare suspicion on another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible."

*State v. Rousan*, 961 S.W.2d 831, 848 (Mo. banc 1998) (citations omitted).

When police arrested Defendant, they found a large, active marijuana-growing operation on the farm. At that time, Sheena was the only other person residing there because D.J. had left several weeks earlier to spend the summer with his grandparents. To be relevant, Defen-

dant's proffer had to directly connect Sheena to the crime of manufacturing marijuana. *See Williams v. State,* 168 S.W.3d 433, 445–46 (Mo. banc 2005) (the evidence must directly connect "some identifiable person" with the charged crime). Defendant failed to do so. All the proffer tended to show was that marijuana plants were found in Defendant's house five months after his arrest. At that time, Sheena was not living there. The house had been stripped, and the electricity had been turned off. Defendant presented nothing to prove when the house became vacant. Indeed, the proffer did not exclude the possibility that Defendant could have secreted the marijuana plants in his own house. The entry of an adult abuse order would not have prevented him from returning home in violation of the order. He did not testify during the offer of proof, and the witnesses who did testify were only able to account for Defendant's whereabouts during the limited times they were with him.[8] While empty, any number of persons—including Defendant—could have gained access to the house through the window, just as Jeremy did when he went there with Defendant. Moreover, Jeremy testified that he saw no marijuana in the house during his first visit there. Defendant was present and knew the house was unoccupied. The second trip to the house did not take place for two or three hours, and Defendant drove there alone in his own car ahead of the other four persons who accompanied him. Thus, Defendant's proffer was irrelevant because it failed to clearly prove that Sheena, rather than Defendant, was manufacturing marijuana on June 21, 2002. *See*

*State v. Wilson,* 105 S.W.3d 576, 583 (Mo. App.2003); *Felder v. State,* 88 S.W.3d 909, 914 (Mo.App.2002).

■ Absent a clear abuse of discretion, we must uphold the trial court's decision to exclude Defendant's proffered evidence. *See State v. Sanchez,* 186 S.W.3d 260, 264 (Mo. banc 2006). An abuse of discretion only occurs when the trial court's ruling is clearly against the logic of the circumstances and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful consideration. *Hancock v. Shook,* 100 S.W.3d 786, 795 (Mo. banc 2003). "When reasonable minds can disagree as to the action taken by the trial court, then the trial court has not abused its discretion." *State v. Edberg,* 185 S.W.3d 290, 293 (Mo.App. 2006). Judged by that standard, we find no abuse of discretion here.

■ Assuming *arguendo* that the court erred in excluding Defendant's offer of proof, our disposition of this point would not change. Even when a trial court has erred in excluding evidence, we must affirm unless the ruling was so prejudicial that it deprived Defendant of a fair trial. *State v. Norman,* 145 S.W.3d 912, 919 (Mo.App.2004). There is a rebuttable presumption that excluded admissible evidence is prejudicial. *Id.* However, this presumption is rebutted when the error is harmless beyond a reasonable doubt. *Id.* at 919–20. In considering whether the trial court's exclusion of evidence was harmless beyond a reasonable doubt, an appellate court takes "special note of all evidence presented, the nature of the

---

8. Defendant later testified during his direct examination that he did not return to the farm from the time he was arrested until the end of November. This testimony was first presented after the offer of proof had concluded and the court had ruled that Defendant's proffer was irrelevant.

charge and the role the excluded evidence would have played in the defense's theory." *Id.* at 920. Where evidence is cumulative of other properly admitted evidence, it could not have contributed to conviction and is harmless beyond a reasonable doubt. *Id.*

■ After the State rested, Defendant called Douglas Ennis (Ennis) and himself as witnesses. Ennis was serving time in prison for felony possession of marijuana and felony forgery. Ennis worked on Defendant's ranch doing manual labor in 2000. He helped Sheena and D.J. tend patches of marijuana growing on the property. The plants were growing under lights. Ennis testified that Defendant was not involved; "[h]e's totally against any drug activity." [9] When Defendant found Ennis and D.J. smoking marijuana, Ennis was lectured at length about it by Defendant. After a second offense, Ennis said he was fired by Defendant. In Defendant's testimony, he reiterated that there had been problems with D.J. smoking marijuana. Defendant argued with D.J. and Sheena about it. According to Defendant, his wife thought smoking marijuana "was a normal thing." Defendant was divorced from Sheena by the time his trial took place. He testified that he had no knowledge that marijuana was being grown in the woods on his farm, and he did not go into any of the sheds being used for that purpose.

In short, Defendant was able to present evidence to support his defensive theory: Sheena and D.J. were the persons who were involved in growing marijuana on the farm. The jury heard Ennis testify that Defendant was not involved in that operation, was totally against drugs and fired Ennis for his own drug use. Defendant's disclosure of Ennis' conviction for felony possession of marijuana during his direct examination appears to have been intended to enhance the believability of his testimony. The aforementioned testimony was corroborated by Defendant, who told the jury that he opposed D.J.'s use of marijuana, argued with his stepson about it and had continuing arguments with Sheena because she condoned it. The jury also heard Defendant profess his lack of knowledge that marijuana was being grown on the premises and his lack of involvement in the growing operation. Therefore, the excluded evidence contained in Defendant's offer of proof was cumulative of other properly admitted evidence and, hence, harmless beyond a reasonable doubt. *See Norman*, 145 S.W.3d at 920. Point III is denied.

## *Point I*

■ Defendant's first point on appeal contends that the trial court precluded Defendant from testifying about out-of-court statements made by Sheena exhorting Defendant to manufacture marijuana and his "absolute refusal to consider the idea at that time or in the future." Defendant claims that he was prevented from presenting this testimony "when the trial court ruled on a Motion in Limine regarding the testimony." Based on our review of the record, this point presents nothing for us to review because the trial court changed its ruling during the trial. The

---

**9.** After Ennis made this statement, the State objected to it. While the objection was sustained, the State did not ask the court to strike the answer or instruct the jury to disregard it. Accordingly, the jury could still con-sider this evidence. *See State v. Tilley*, 104 S.W.3d 814, 820 n. 4 (Mo.App.2003); *State v. Hirt*, 16 S.W.3d 628, 634 (Mo.App.2000); MAI–CR 3d 302.02.

following additional facts are relevant to the determination of this point.

On the morning of trial, the trial court took up the State's motion in limine regarding "statements made by Defendant's to others that are exculpatory in nature." The motion has not been included in the record on appeal, but the court described the purpose of the motion in a docket entry. According to the court, Defendant intended to testify that: (1) he had argued with Sheena and D.J. about growing marijuana on the premises; and (2) he reported the discovery of additional marijuana plants in his house to the police five or six months after he was arrested. The trial court initially concluded that such statements were hearsay and did not fall within any exception that rendered them admissible.

At the close of the State's evidence, defense counsel asked the court to reconsider its ruling on the motion in limine and asked to make an offer of proof. With respect to the first prong of the motion, counsel stated that:

[D]efendant would testify, if Your Honor permits, that he lived at the residence with Sheena Lloyd. That was the other person that was present at the time of the execution of the warrant, as well as her son, Mr. Lloyd's stepson, [D.J.] That throughout this period of time Mrs. Lloyd had spoken to him about raising marijuana, that she wanted to do it, that it would make money, in fact that she had previously done so on other occasions. And that Mr. Lloyd forbid her to do that and said he wanted nothing to do with that, that he did not want her having marijuana around in any way, shape or form.

Defense counsel then presented a second offer of proof (described above in our dis-

cussion of Point III, *supra*) concerning the discovery of additional marijuana in Defendant's house five months after his arrest. The trial court adhered to its initial ruling regarding the second prong of the State's motion in limine. With respect to Defendant's statements to his spouse, however, the court reversed its initial ruling:

[T]he motion in limine is sustained as to all those events pertaining to the after-found marijuana some five or six months after the charges occurring on June 21, 2002. I again renew my statement, [defense counsel], that the information that can be proffered is that information by your client as to statements made at the time of the event, at or near the date of the event, made to his spouse as to his position regarding there being marijuana in or about the premises where he lived at the time.... Obviously, if he does testify it's up to [the prosecutor] to further preserve his objections to that particular type of testimony. Does that clarify the issue for you?

Thus, the court ruled that Defendant *could* present such testimony if he chose to do so, subject to any objections that might be interposed at that time by the State.

During Defendant's direct examination, he testified that there had been problems between him and Sheena with regard to D.J. Defendant had "a few pretty serious, very heated rounds" with D.J. because he had been smoking marijuana. As of June 21, 2002, there were continuing arguments between Defendant and Sheena with regard to D.J. because she believed his drug use "was a normal thing." Defendant and Sheena were divorced as of the date of trial. All of this testimony was elicited without objection from the State. The record does not reveal any further at-

tempts by Defendant to present additional testimony relating to this subject.

A motion in limine simply serves the purpose of alerting opposing counsel and the trial court to potentially objectionable evidence. *Johnson v. State,* 189 S.W.3d 640, 646 (Mo.App.2006). The court's ruling on a motion in limine is interlocutory and subject to change during the course of trial. *State v. Purlee,* 839 S.W.2d 584, 592 (Mo. banc 1992); *State v. Yole,* 136 S.W.3d 175, 178 (Mo.App.2004). Therefore, the granting of such a motion before trial presents no reviewable issue on appeal. *State v. Jordan,* 937 S.W.2d 262, 264 (Mo.App.1996). Instead, the proponent of the evidence must attempt to present the excluded evidence at trial in order to preserve the issue for appellate review. *Purlee,* 839 S.W.2d at 592; *Yole,* 136 S.W.3d at 178; *Jordan,* 937 S.W.2d at 264. "Missouri courts strictly apply these principles based on the notion that trial judges should be given an opportunity to reconsider their prior rulings against the backdrop of the evidence actually adduced and in light of the circumstances that exist when the questioned evidence is actually proffered." *State v. Mickle,* 164 S.W.3d 33, 55 (Mo.App.2005).

In the case at bar, the trial court did reconsider its initial ruling on the motion in limine. During trial, the court ruled that Defendant could testify about statements he made to his wife, at or near the date of his arrest, regarding his position about there being marijuana in or about the premises where he lived at the time. Defendant simply failed to do so. Accordingly, the disposition of this point is governed by our recent decision in *State v. Miller,* 172 S.W.3d 838 (Mo.App.2005).

In *Miller,* the State filed a motion in limine to exclude all questions, evidence or argument concerning Miller's medical treatment or detention following her arrest. The trial court sustained the motion. *Id.* at 853. Nevertheless, Miller presented testimony and exhibits about her injuries during the trial without objection by the State. On appeal, Miller claimed "the trial court erred by sustaining the State's motion in limine which prevented her from presenting medical evidence of injuries she sustained after being stopped by the officers." *Id.* We held that Miller's point preserved nothing for appellate review:

> [A] motion in limine is interlocutory in nature and, by itself, preserves nothing for appeal. At trial, Appellant testified about her injuries and introduced photos of them. The State did not object to any of this evidence. Although she argues that "she was prohibited from corroborating this testimony and evidence with medical evidence to support her claim," she fails to direct us to any portion of the record, other than the interlocutory order in limine, where she attempted to introduce any additional evidence or made offers of proof about the same. As a result, Appellant has preserved nothing for our review.

*Id.* at 853–54 (citation omitted). We reach the same conclusion here. Defendant's first point is denied.

### Point II

In Defendant's second point, he contends the trial court committed plain error in failing to declare a mistrial *sua sponte,* instruct the jury or grant a new trial based on "several improper comments, questions, and actions" of the prosecuting attorney during cross-examination and closing arguments. An appellate court has the discretionary authority to review for plain error affecting a defen-

dant's substantial rights "when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20; *State v. Carney*, 195 S.W.3d 567, 570 (Mo.App.2006). Plain error review is utilized sparingly, and a defendant seeking such review bears the burden of showing that plain error has occurred. *State v. Smith*, 185 S.W.3d 747, 757 (Mo.App.2006).

Plain error review involves a two-step process. *State v. Stallings*, 158 S.W.3d 310, 315 (Mo.App.2005). First, we determine whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. *Id.* "Plain errors are evident, obvious, and clear, and we determine whether such errors exist based on the facts and circumstances of each case." *State v. Johnson*, 182 S.W.3d 667, 670 (Mo.App.2005). Absent a finding of facial plain error, this Court should decline its discretion to review the claim. *Stallings*, 158 S.W.3d at 315. "If plain error is found, we proceed to the second step to consider whether the error actually resulted in manifest injustice or a miscarriage of justice." *Id.* at 315–16.

Defendant's first complaint concerns two questions asked by the prosecutor during Defendant's cross-examination. When the prosecutor asked Defendant about his prior convictions, he answered that he had convictions "[y]ears ago when I was a lot younger and stupid, [for] burglary, safe cracking, stealing a yacht— several, counterfeiting money." On further questioning, Defendant also admitted that he had been convicted twice of escape. During a 20–year period, Defendant had spent a total of nine years in prison. During the process of eliciting information from Defendant about how much total time

he had been sentenced to serve, the prosecutor asked, "How long were you out there passing counterfeit before they caught you?" Before Defendant could answer, Defense counsel's objection was sustained. Counsel asked for no other relief. At the end of the cross-examination, the prosecutor returned to the subject of Defendant's prior convictions by questioning him about the number of states in which he had committed crimes. Defendant said he had convictions in three states. On further questioning, however, Defendant admitted that he had been convicted of crimes in Florida, Louisiana, North Carolina and Texas. Defendant denied that he had an Illinois conviction. When the prosecutor asked Defendant if he had a Missouri conviction, defense counsel objected and asked to approach the bench. The prosecutor withdrew the question. Defense counsel requested no additional relief, and Defendant's cross-examination ended.

For Defendant to carry his burden of establishing facial plain error, he must show that the asking of these two questions had a decisive effect on the jury's verdict. *State v. Tripp*, 168 S.W.3d 667, 678–79 (Mo.App.2005); *State v. Hightower*, 951 S.W.2d 712, 717 (Mo.App.1997). We find no such effect here. Because Defendant testified on his own behalf, he was subject to impeachment like any other witness. § 546.260. Therefore, his prior convictions were admissible for impeachment purposes to affect his credibility. § 491.050; *State v. Gregory*, 42 S.W.3d 766, 768–69 (Mo.App.2001). The State had an absolute right to cross-examine Defendant about his convictions for that purpose. *State v. Simmons*, 825 S.W.2d 361, 364 (Mo.App.1992). Defendant's answers were designed to blunt the impact of his prior convictions, and he did not fully disclose all of them at first. Therefore, it was

permissible for the prosecutor to ask additional questions to challenge and test Defendant's statements. *Taylor v. State*, 173 S.W.3d 359, 366 (Mo.App.2005); *State v. Skelton*, 887 S.W.2d 699, 704 (Mo.App. 1994); *see State v. Taylor*, 589 S.W.2d 302, 304 (Mo. banc 1979). In any event, Defendant did not answer the two questions about which he now complains. We reject as spurious Defendant's assertion that the mere asking of either question obligated the court to grant a mistrial on its own motion. *See State v. Gilmore*, 661 S.W.2d 519, 522–23 (Mo. banc 1983). Equally meritless is Defendant's further assertion that, simply because the questions were asked, the court should have *sua sponte* admonished the jury in some way. After the jury was sworn, they were read two instructions. *See* MAI–CR 3d 300.06; 302.01; 302.02. Instruction No. 2 stated, in pertinent part, that "You must not assume as true any fact solely because it is included in or suggested by a question asked a witness. A question is not evidence, and may be considered only as it supplies meaning to the answer." The jury had already received the court's instructions on this issue, so no further admonishment was required. *See State v. Wilson*, 888 S.W.2d 744, 748 (Mo.App.1994).

■■■■ Defendant's second complaint concerns four comments made by the prosecutor in closing argument. Statements made in closing argument rarely constitute plain error. *State v. Clayton*, 995 S.W.2d 468, 478 (Mo. banc 1999); *State v. Tabor*, 193 S.W.3d 873, 878 (Mo.App.2006). In the absence of an objection and request for relief, a trial court's uninvited interference with summation may itself constitute error. *See State v. Clemmons*, 753 S.W.2d 901, 907–08 (Mo. banc 1988). Counsel's failure to object may have been intentional

for reasons of trial strategy, or the comment may have been unimportant enough to merit an objection. *See State v. Campbell*, 965 S.W.2d 878, 882 (Mo.App.1998). For Defendant to carry his burden of establishing facial plain error, he must show that the prosecutor's comments had a decisive effect on the jury's verdict. *State v. Kee*, 956 S.W.2d 298, 304 (Mo.App.1997); *State v. Vinson*, 833 S.W.2d 399, 407 (Mo. App.1992). Again, we find no such effect here.

■■■ The first comment about which Defendant complains is set out below in context and identified with italics:

[I]n determining [Defendant's] credibility, you can also remember criminal history . . . you can remember he's a counterfeiter, he's a safecracker, he's a thief, he's a burglar, he's a forger. And they told you that he had a little trouble when he was young. He had a twenty-five year criminal history. Oh, I forgot, escape—twice. You can think about those things in determining his credibility. *In the art of good counterfeiting— you can't pass if people don't trust you.* And when he testified . . . [h]e was likeable. You wanted to trust him. A lot of people have over the years. . . .

Defendant did not object to this argument. Viewed in context, the prosecutor was simply urging the jury to consider Defendant's extensive criminal background in deciding whether to believe his testimony that he had no knowledge of the extensive marijuana-growing operation on his property. Use of prior convictions for impeachment purposes is proper. *State v. Davenport*, 5 S.W.3d 547, 550 (Mo.App. 1999).

■■■ The next three comments about which Defendant complains are set out below in the same fashion:

*This case is about a greedy man. [Defendant] made money counterfeiting, he made money safe cracking, now he's found a new enterprise*—two hundred and thirty thousand dollars. *Two hundred and thirty pounds of marijuana to put out into the system to sell to whoever wants to buy it.* That's what this case is about. It's not about whether he doesn't like marijuana, it's not about whether he smokes it, it's about how much money he could make through an illegal enterprise.

Once again, Defendant did not object to any of these comments. Viewed in context, the prosecutor was asking the jury to infer that Defendant was knowingly growing marijuana on his property to make money. A prosecutor is entitled to substantial latitude in closing argument and may suggest reasonable inferences for the jury to draw from the evidence. *State v. Buchli,* 152 S.W.3d 289, 304 (Mo.App. 2004); *State v. Wade,* 826 S.W.2d 843, 845 (Mo.App.1992). The jury could infer an intent to distribute marijuana from the sheer quantity of plants seized on Defendant's farm, the fact that the drugs were in a form unsuitable for immediate use and the discovery of a scale in Defendant's residence. *See, e.g., State v. Sanderson,* 169 S.W.3d 158, 163, 164 n. 3 (Mo.App. 2005); *State v. Harris,* 153 S.W.3d 4, 6 (Mo.App.2005); *State v. Kirby,* 128 S.W.3d 619, 620 (Mo.App.2004); *State v. Belton,* 108 S.W.3d 171, 176 (Mo.App.2003); *State v. Fairow,* 991 S.W.2d 712, 714 (Mo.App. 1999). Therefore, the argument that Defendant intended to sell the marijuana produced on his farm was properly supported by the evidence and did not imply that Defendant committed an uncharged crime. *State v. Cobb,* 820 S.W.2d 704, 711–12 (Mo. App.1991). In short, the prosecutor's argument attempted to explain Defendant's

motive for manufacturing marijuana, which was a legitimate subject to address in closing argument. *See State v. Biggs,* 170 S.W.3d 498, 507 (Mo.App.2005); *Baugh v. State,* 870 S.W.2d 485, 491 (Mo.App.1994).

 Defendant's third complaint is that the prosecutor waved a paper copy of the Defendant's arrest record before the jury during his closing argument. To support this assertion, Defendant cites a portion of the transcript which reveals only the following:

> [Prosecutor]: He's sincere and warm. But in determining his credibility, you can also remember criminal history.

> [Defense counsel]: Your Honor, I'll object to this. This has not been offered into evidence. I'll object to the inflammatory conduct of the prosecutor. He knows what he is doing is wrong.

> The Court: Overruled. Proceed.

The record does not disclose what, if anything, the prosecutor was doing to prompt an objection or why the court overruled it. "Where there is no clear record provided, a reviewing court has nothing upon which it can base its decision and, hence, nothing to decide." *Dewitt v. Mitchell,* 938 S.W.2d 305, 307 (Mo.App.1997). The assertion in Defendant's brief that his arrest record was being shown to the jury at that time provides no basis for relief. *See Rice v. State, Dept. of Social Services,* 971 S.W.2d 840, 842 (Mo.App.1998) (statements in a party's brief which are not supported by the record on appeal furnish no basis for an appeal); *Grant v. Estate of McReynolds,* 779 S.W.2d 246, 247 (Mo.App.1989) (an appellate court generally will not consider matters outside the record).

Defendant has failed to sustain his burden of showing facially substantial grounds for believing that manifest injustice or mis-

carriage of justice has resulted from the incidents encompassed by his second point on appeal. Accordingly, we decline his request that we review his second point for plain error.

Although the foregoing discussion disposes of the issues presented by Defendant's appeal, there is one final matter we must address. The first amended information alleged that Defendant was a persistent offender, and the court so found beyond a reasonable doubt. Defendant's thirty-year sentence is consistent with that finding. *See* § 558.011.1(2) (the authorized term of imprisonment for an unenhanced class B felony is 5–15 years); § 558.016.7(2) (a persistent offender convicted of a class B felony may be sentenced to a prison term not to exceed thirty years). The judgment contained in the record on appeal, however, fails to accurately reflect Defendant's status as a persistent offender. This oversight or omission in the judgment was a clerical error which can be corrected pursuant to Rule 29.12. *See State v. Taylor,* 123 S.W.3d 924, 931 (Mo.App.2004). Accordingly, while we affirm Defendant's conviction and sentence, we must remand this case with instructions to the trial court to enter an amended written judgment reflecting that Defendant was found to be a persistent offender. *See State v. Dillard,* 158 S.W.3d 291, 305 (Mo.App.2005).

GARRISON and BARNEY, JJ., concur.