STATE of Missouri, Plaintiff–
Respondent,

v.

Najwa T. CRYDERMAN, Defendant–
Appellant.

No. 27876.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 20, 2007.

Margaret M. Johnston, Columbia, for
Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen.,
Joan E. Reed, Assistant Attorney General,
Jefferson City, for Respondent.

PHILLIP R. GARRISON, Judge.

Najwa T. Cryderman ("Defendant") ap-
peals the jury conviction of two counts of
the class A felony of trafficking drugs in
the first degree, violations of Section
195.222.[1]  She contends that the trial court
erred in overruling her motion for judg-
ment of acquittal and in sentencing her

1. All references to statutes are to RSMo    (2000) unless otherwise indicated.

because there was insufficient evidence to support a finding of guilt beyond a reasonable doubt on these counts.

On December 9, 2003, Sergeant James Musche ("Sergeant Musche") of the Missouri State Highway Patrol's Division of Drug and Crime Control was given information by a confidential informant ("the C.I.") that a person called "Honey" might be selling drugs from a residence at 1116 West Madison, in Springfield, Missouri ("the residence"). Based upon that information, Sergeant Musche accompanied the C.I. on two separation occasions to the residence, but remained in the car both times while the C.I. went inside. After the second visit, the C.I. gave Sergeant Musche Honey's telephone number and told him to call her himself next time.

On December 16, 2003, Sergeant Musche called Honey and made arrangements to purchase $500 worth of crack cocaine from the residence that afternoon. Upon arriving at the residence, Sergeant Musche was invited in by Honey, who was Defendant, where she handed him a plastic sandwich bag containing twenty-six individually wrapped pieces of an off-white substance that appeared to be crack cocaine or cocaine base. Sergeant Musche paid Defendant $500.

Sergeant Musche had a second drug transaction with Defendant at the residence on December 22, 2003, at which time Defendant answered the door, invited him inside, and gave him a plastic bag containing thirty small, wrapped pieces of an off-white substance that appeared to be crack cocaine in exchange for $500. A third transaction took place in the parking lot of a business on West Kearney Street in Springfield, Missouri. At that time, Sergeant Musche was given a plastic bag containing twenty-nine individually wrapped pieces of crack cocaine. All three transactions were audio recorded and placed into evidence.

The drugs from each transaction were placed inside evidence envelopes, and sent to the Missouri Highway Patrol Crime Lab for testing, where all three tested positive for cocaine base, crack cocaine. A criminalist with the crime lab weighed each of the three bags of cocaine, but in doing so, took the net weight of the drugs procured from the first transaction, but the gross weight of the drugs from the second and third transactions. Thus, the second and third measurements included the weight of the plastic bags that contained the drugs. The net weight of the drugs from the first transaction was 3.64 grams, the gross weight for the second and third transactions was 5.21 grams and 4.83 grams, respectively.

Defendant was arrested on August 26, 2004, about seven months after the last transaction with Sergeant Musche. She was charged in a felony information with two counts of first degree trafficking drugs based on the second and third transactions with Sergeant Musche, violations of Section 195.222, and one count of felony distribution of a controlled substance near schools, a violation of Section 195.214.

The case was tried before a jury, and at the close of the State's evidence Defendant moved for a judgment of acquittal alleging there was insufficient evidence to support submitting the case to the jury. The motion was overruled and Defendant was found guilty on all three counts.[2]

Defendant's motion for a new trial was overruled, and she was sentenced to twelve

2. Defendant does not appeal her conviction for felony distribution of a controlled substance near a school.

years in the department of corrections on each count, with the sentences to run concurrently. Defendant was also sentenced to a 120–day drug and alcohol treatment program, pursuant to Section 559.115, and she was ordered to pay $1,500 in restitution for the drug buy money. This appeal followed.

This court reviews the evidence in the light most favorable to the verdict and rejects all contrary evidence and inferences. *State v. Lloyd,* 205 S.W.3d 893, 898 (Mo.App. S.D.2006). We do not weigh the evidence. *State v. Crawford,* 68 S.W.3d 406, 408 (Mo. banc 2002). Instead, our review is limited to determining whether sufficient evidence exists upon which a reasonable juror could have found Defendant guilty beyond a reasonable doubt. *Id.*

■ Defendant argues that the State failed to present sufficient evidence to uphold her drug trafficking convictions. The thrust of Defendant's claim is that the State failed to present evidence of the actual weight of the controlled substances obtained from Sergeant Musche's second and third transactions with Defendant.

■ The weight of the illegal substance is an essential element of the crime of first-degree drug trafficking. § 195.222.3; *see also State v. Burns,* 877 S.W.2d 111, 113 (Mo. banc 1994). Under Section 195.222.3, a person commits the crime of first-degree drug trafficking if she "distributes, [or] delivers ... more than two grams of a mixture or substance ... which contains cocaine base." The State bears the burden of proving beyond a reasonable doubt each element of the charged crime, including the weight of the illegal substances involved here. *State v. Givens,* 917 S.W.2d 215, 216–17 (Mo.App. W.D. 1996).

During Sergeant Musche's second transaction with Defendant, he received a plastic bag containing thirty "rocks" of crack cocaine that were individually wrapped in plastic. The State presented evidence that the gross weight of the drugs and the plastic was 5.21 grams. The materials received from the third transaction included a plastic bag containing twenty-nine individually wrapped "rocks." The materials received during the third transaction weighed 4.83 grams collectively. No evidence was presented regarding the weight of the plastic bags. Furthermore, it is unclear whether the State's measurements included the outer bag containing the bagged "rocks" or just the individual "rock" bags themselves.

■ It is necessary for the State to establish the weight of any non-controlled substance involved when such substance is mixed with a controlled substance and the weight of the controlled substance is an element of the crime charged. *State v. Bethel,* 569 S.W.2d 270, 272 (Mo.App.St. L.D.1978). The weight of the non-controlled substance must be determined by some reasonable manner. *Givens,* 917 S.W.2d at 217. However, the State is not required to present the exact weight of every non-controlled substance in the substance transferred if it is reasonable to infer or if there is an expert opinion that the non-controlled portion of the substance is not sufficient enough to lower the weight below the required amount for the charge. *Bethel,* 569 S.W.2d at 272.

In *Givens,* the evidence was that the defendant was arrested with a plastic bag containing seventeen smaller plastic bags that each had an amount of crack cocaine in them. 917 S.W.2d at 216. The total weight of the crack cocaine was an essential element of the crime the defendant was charged with. *Id.* In order to determine the weight of the controlled substance, the State's expert testified that he had weighed all seventeen bags and their

contents and then weighed one empty baggy. *Id.* at 217. He then multiplied the weight of the bag by seventeen, and subtracted that weight from the total weight to determine the weight of the controlled substances. *Id.* This method was accepted by the *Givens* court and the evidence was found to be sufficient to uphold the conviction. *Id.*

In the case at bar, the State presented no evidence of the weight of the plastic bags, nor did it produce any expert testimony indicating that the weight of the plastic bags was not sufficient enough to lower the weight below the statutory demarcation line. Therefore, the only option the State is left with is to argue that it was reasonable for the jury to infer that the weight of the plastic bags was not sufficient enough to lower the weight below the statutory line. *Id.; Bethel,* 569 S.W.2d at 272.

The State argues that the jury could reasonably have inferred that the weight of the plastic bags involved in the second and third transactions was not sufficient enough to lower the weight below the 2.0 gram requirement of Section 195.222.3. In support of its argument, the State points to the net weight of the first transaction which involved twenty-six "rocks" of crack cocaine. The total weight of the illegal substance from the first transaction was 3.64 grams. The State reasons that if twenty-six "rocks" of cocaine weighed 3.64 grams, then surely the thirty and twenty-nine "rocks" involved in the second and third transactions each collectively weigh more than the required 2.0 grams. The State cites no case law as support for its argument.

Fundamental to the State's argument is the assumption that all of the "rocks" involved weighed a relatively consistent amount. Unfortunately, the State did not present the gross weight of the first transaction along with the net weight. Therefore, even if we were to assume that similar bags were used in all three transactions, we are still unable to determine the weight of the plastic bags.

In addressing the State's argument, we note that this court is presented with no evidence to support the assumption that the "rocks" were uniform in size or weight. On the contrary, the evidence supports a conclusion that the "rocks" were in fact, inconsistent. For example, the difference between the gross weights of the materials from the second and third transactions indicates that either the "rocks," the bags, or both, were not uniform in weight.

The twenty-six "rocks" involved in the first transaction collectively weighed 3.64 grams, or .14 grams each. If this Court were to then use .14 grams as a baseline, we could establish that the drugs involved in the second and third transactions weighed 4.2 and 4.06 grams, respectively. However, under this approach the plastic bags involved would not be consistent in weight. Specifically, they would vary in weight from .034 grams $((5.21 - 4.2) / 30)$ in the second transaction to .026 grams $((4.83 - 4.06) / 29)$ in the third transaction if this Court assumes that the State did not include the outer bag in its measurements. If it did include that bag, then the bags would vary in weight from .032 grams to .025 grams. As this example aptly illustrates, there must have been some variance in the weights of either the "rocks," the bags, or perhaps both. Faced with such a variance, we are unable to accept the State's reasoning that the net weight of the first transaction can be used as a baseline to determine the net weights of the second and third transactions.

Another example demonstrates the deficiency of the State's assumption. Even viewing the State's argument in its most favorable light, it cannot explain the .38

gram difference in weight between the second and third transaction materials. The second transaction only involved one more "rock" than the third transaction. Yet, even if we assume that the extra "rock" weighed .14 grams and the extra bag weighed .034 grams, there is a .20 gram difference in weight between the second and third transactions that is not accounted for (.38 − (.14 + .034)). We are left guessing as to whether this .20 gram difference can be attributed to differences in the weights of the "rocks" or the bags. As this .20 gram discrepancy reveals, we are unable to assume that the weight of each "rock" was consistent enough to accept the State's argument that the net weight of the first transaction can be used as a guideline for determining that the weight of the drugs in the second and third transactions each exceeded the required amount.

Additionally, and perhaps more importantly, the State's own expert, Criminalist Supervisor Kay Monk ("Monk"), testified that it was possible that some of the bags might contain less than a whole "rock." Moreover, when asked why she did not obtain a net weight for the drugs involved in the second and third transaction, Monk responded that she "just took a gross weight since there were so many plastic bags."

Knowing the gross weight of the materials from the two transactions, we can determine the maximum amount each bag can weigh before the weight of the drugs involved is pushed below the statutory limit. Thus, since the State was required to prove that the controlled substances involved in the second and third transaction each weighed 2.0 grams or more, we can determine the maximum allowable weight of the bags by subtracting the 2.0 grams from the gross weight and then dividing the result by the number of bags. Assum-

ing that the State did not include the outer bag in its measurements, we know that if each individual bag involved weighed any more than .107 grams (approximately three one-thousandths of an ounce) ((5.21 − 2) / 30) in the second transaction and .097 grams ((4.83 − 2) / 29) in the third transaction, then the total weight of the bags would have been enough to push the remaining drug's weight under the 2.0 gram requirement. If the State did include the outer bag in its measurement, then the maximum weight per bag would only be .103 grams ((5.21 − 2) / 31) for the second transaction and .0943 grams ((4.83 − 2) / 30) for the third transaction. Presented with no evidence as to the weight of a bag, this Court is unwilling to assume that an individual plastic bag weighs less than three one-thousandths of an ounce.

Lastly, the record does not demonstrate that the exhibits constituting the materials from the second and third transactions were passed to the jury. Instead, only the materials from the first transaction were published. As the jury did not have an opportunity to examine the materials from the second and third transactions, this court is hesitant to conclude that the jury could have reasonably inferred that the same types of bags were used in the last two transactions or that the "rocks" involved in all of the transactions were similar in size or weight.

What is clearly demonstrated is that the State's assumption is not a rational or reasonable one. The State presents no evidence of the weight of any of the bags, or that the bags used in the transactions were similar. Likewise, the State is unable to show that the weight of each individual "rock" was uniform and consistent. The State's own expert conceded that some of the bags might actually contain less than a full "rock." The burden was upon the State to prove by some reason-

able manner the weight of the controlled substances involved in the second and third transactions, or to present evidence such that a reasonable inference could be made that the weight of the plastic bags was not sufficient enough to lower the weight below the statutorily required line. *Givens*, 917 S.W.2d at 217; *Bethel*, 569 S.W.2d at 272. The State failed to present such evidence. As such, this Court finds merit in Defendant's challenge. Defendant's two convictions for first-degree drug trafficking pursuant to Section 195.222 are reversed. This opinion does not affect Defendant's conviction for felony distribution of a controlled substance near schools in violation of Section 195.214.

BATES, C.J., and BARNEY, J., concur.