

# In the Missouri Court of Appeals
## Eastern District
DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED100189 |
| | ) | |
| Respondent, | ) | Before the Circuit Court of |
| | ) | the City of St. Louis |
| vs. | ) | |
| | ) | Hon. Michael P. David |
| MELVIN HUFFMAN, | ) | |
| | ) | Filed: |
| Appellant. | ) | June 17, 2014 |

Melvin Huffman appeals from his conviction on one count of statutory sodomy in the first degree. Huffman asserts plain error in the trial court's refusal to give a child molestation instruction and its failure to *sua sponte* declare a mistrial during the State's closing argument and during the State's cross-examination of a defense witness. We find no errors, plain or otherwise, and affirm.

Huffman was charged with statutory sodomy in the first degree for touching the outside of H.B.'s vagina with his hand one night while she was having a sleepover with his daughter, Amanda. The information charged that this occurred between May 1, 2002 and September 1, 2002. At trial, H.B. testified that she and Amanda were sleeping in the same bed in Amanda's room. H.B. woke up to find her legs apart and Huffman touching the outside of her vagina. She rolled over and hit him in the face with her knee. H.B. said Amanda woke up and asked Huffman what he was doing; he pretended to look for something on the floor then left the room. H.B. told Amanda what happened. H.B.

stayed the remainder of the night, and the next day the girls swam in the Huffman's pool and played video games. Several years later, after running into Huffman at various places, H.B. reported the incident.

H.B. testified that she was not sure if she was ten or eleven years old at the time, but she knew that this incident happened the summer after fourth grade. Based on her birth date and the year she started school, the summer after fourth grade would have been the summer of 2002. In her reports to others, H.B. consistently stated she was ten or eleven. She never indicated that it could have happened any earlier than the summer of 2002. Defense counsel tried to suggest on cross-examination that H.B. had switched her story from age eleven to age ten because Huffman was incarcerated during the summer of 2003 when H.B. was eleven. Huffman was also incarcerated for parts of 1999, 2000 and 2001. He was not incarcerated at all in 2002.

Huffman denied that anything like this ever happened and claimed not to even remember H.B. Amanda testified that she and H.B. were only friends during the 1998—1999 school year; she denied knowing anything about Huffman touching H.B. Huffman's wife testified that H.B. had not been at their house after early 2000.

The State submitted the first-degree statutory sodomy instruction, which was given to the jury without objection. It directed the jury to find Huffman guilty if they found that on or about May 1, 2002 to September 1, 2002, Huffman knowingly touched H.B.'s vagina, that the conduct was "deviate sexual intercourse" and that H.B. was less than twelve years old at the time. The definition of "deviate sexual intercourse" therein included hand to vagina contact. Defense counsel submitted a child molestation instruction, which included the same date range of May to September 2002. Counsel

2

argued this was a lesser included offense—not relating to the date of the crime—but the trial court rejected the instruction.[1]

The State argued that as to the time frame of the incident as stated in the instruction, there was sufficient evidence that it happened in the summer of 2002, after H.B. was in fourth grade, when she was ten. This was corroborated, the prosecutor argued, by Huffman's own testimony that in 2002, they bought the pool the girls would have been swimming in the day after the incident. The prosecutor went through the remaining elements listed in the verdict-directing instruction and, in the context of whether H.B. was under twelve, noted that the evidence showed she was ten and that, in any case, it could not have happened when she was eight, nine or eleven because Huffman was incarcerated at those times. The defense made no argument regarding the time period in which this happened, focusing instead on the manner in which it was reported and on discrediting H.B.'s account of the details of the incident.

The jury deliberated for 45 minutes and found Huffman guilty of statutory sodomy in the first degree. This appeal follows.

In Point I, Huffman argues that because time is not of the essence in a sex offense case, the jury's verdict could have been based on evidence that the incident occurred before August 28, 2000—the effective date of the addition of hand-to-vagina contact to the definition of "deviate sexual intercourse."[2] Before that date, hand-to-vagina contact

---

[1] The trial court's refusal of this instruction appears to rely, correctly, on Becker v. State, wherein this Court held that hand-to-vagina contact can constitute both the greater offense of statutory sodomy and the lesser offense of child molestation. 260 S.W.3d 905, 912 (Mo. App. E.D. 2008). Thus, there was no basis in that "contact sodomy" case, nor is there here, for acquittal of the greater offense and conviction of the lesser such that giving an instruction on child molestation is required. See id.

[2] See S.B. 757 & 602, 90th Gen. Assem., 2d Reg. Sess. (Mo. 2000).

3

constituted child molestation, but not first-degree sodomy.[3]  Huffman claims there was sufficient evidence that this incident happened before that change in the law, and thus there was a basis to acquit him of sodomy and convict on the lesser charge of child molestation.  Therefore, he contends, the trial court plainly erred when it refused to submit his proffered child molestation instruction and should have required the jury to make a specific finding as to timing.

Although he proffered an instruction, Huffman did not argue the time issue he raises on appeal, did not object to the submission of the State's statutory sodomy instruction and did not include any instructional error in a motion for new trial.  We have discretion to review this unpreserved claim of instructional error only if manifest injustice would otherwise occur.  State v. Wurtzberger, 40 S.W.3d 893, 898 (Mo. banc 2001); State v. Mangum, 390 S.W.3d 853, 860-61 (Mo. App. E.D. 2013).  "In the context of instructional error, plain error results when the trial court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict."  State v. Doolittle, 896 S.W.2d 27, 29 (Mo. banc 1995).  We find no error in the refusal to give the child molestation instruction in this case.

Contrary to Huffman's claim, there was not sufficient evidence from which a reasonable juror could conclude that this incident occurred before August 28, 2000.  The only evidence that is arguably in conflict with H.B.'s testimony that this happened in the summer of 2002 is the wife's claim that she does not remember seeing H.B. after early 2000 and Amanda's claim that they were only friends in 1998 and 1999.  This is not sufficient evidence that this crime occurred at any particular time, especially in light of

---

[3] See Section 566.067.1 (1999) (child molestation); Section 566.062.1 (1999) (statutory sodomy); Section 566.010(3) (1999) (definitions).

4

these witnesses' denials that anything like this ever happened. Huffman also points out that the video games H.B. said she played in the summer of 2002 were *also* available before August 28, 2000 and that there was some testimony that the pool the girls swam in may have been purchased earlier than the summer of 2002. Again, this evidence is not probative of when this crime occurred; if there was evidence that the pool and video games could not have been available in 2002, that would tend to show that the incident happened at a different time than H.B. claims. But the fact that they were also available earlier proves nothing.

Moreover, also contrary to Huffman's claim, the jury's verdict reflects that they believed this happened in the summer of 2002—the instruction expressly required the jury to find that this incident happened on or about May 1, 2002 to August 1, 2002 before finding Huffman guilty as they did. That time frame was proven by H.B.'s testimony, in which she consistently maintained that this happened the summer after fourth grade, which was 2002. The jury must have believed that testimony or it could not have reached the verdict it did. Time is not of the essence in a sex offense case, and normally the State is not required to prove a specific date on which the crime occurred. But where, as here, the State charges and submits an instruction with a specific date range, there must be evidence to support that time frame and the State cannot rely on conduct occurring at a substantially different time to secure the conviction. State v. Miller, 372 S.W.3d 455, 465, 468 (Mo. banc 2012) (evidence showed conduct occurred six years earlier than time period charged in information and mirrored in instruction, thus insufficient to support conviction and created double-jeopardy problem). Here, the conviction is based on more than sufficient evidence that the conduct occurred during the charged time period and

5

there was not sufficient evidence that it happened at a substantially different time (much less during a time when the conduct would have amounted to a different offense). During the time period that this was proven to have occurred, Huffman's conduct constituted first-degree statutory sodomy.[4] There is no basis for finding any error in the way the jury was instructed.

Point I is denied.

In Point II, Huffman challenges comments made during the State's closing argument. The prosecutor stated that child molesters work in secret where they are not going to get caught and that is why there were not any witnesses who saw what happened. Then she went on to discuss why Huffman had chosen H.B. as his victim:

> Maybe because he knew she might be a good target. She had only one parent. She was over at the house a lot. Maybe it was a good target. Maybe he didn't realize she was in the bed. I don't know why he picked [H.B.], but he did.

Huffman claims this argument improperly suggested that Huffman was unaware that H.B. was in the bed and was actually attempting to molest his own daughter, Amanda. He contends the trial court should have s*ua sponte* issued a limiting instruction or declared mistrial.

We disagree with Huffman's characterization of this remark. Although it is unclear to whom "she was in the bed" refers, it seems most likely that, given the context and the preceding argument as to how child molesters work, the prosecutor was referring to the fact that Huffman must not have been aware that *Amanda* was in the bed—otherwise, he would not have touched H.B. for fear of

---

[4] As noted above, this conduct could have also been charged as child molestation, but Huffman is not entitled to prosecution only for the least serious crime available. See Becker, 260 S.W.3d at 912. When one act constitutes two crimes, the State may charge either. Id.

getting caught. Or, she may have been referring to Huffman not realizing which of Amanda's friends was in her bed that night. There is no reason however—from the context of the argument or in light of the evidence—to believe that the prosecutor meant to suggest Huffman was attempting to molest his own daughter. Moreover, this one isolated comment—whatever its inference—did not have a decisive effect on the outcome of trial or result in a manifest injustice. See Miller, 372 S.W.3d at 475. Thus, we find no plain error in the trial court's failure to intervene.

Point II is denied.

In Point III, Huffman challenges a question posed during State's cross-examination of his daughter. During cross, the prosecutor asked Amanda: "this isn't the first time you've actually kind of stood up for [Huffman] in a courtroom, is that right?" Defense counsel asked to approach the bench, where the prosecutor indicated she did not intend to go into the specifics, but argued the question went to Amanda's bias and prejudice. The court responded that any bias or prejudice she has comes from her relationship with Huffman. The State then withdrew the question in open court, and it was never answered. Despite the question having been unanswered and withdrawn, Huffman still argues the trial court should have given a limiting instruction or declared a mistrial.

This point is completely without merit. Questions are not evidence, and even improper questions are generally not prejudicial if left unanswered. State v. Stone, 280 S.W.3d 111, 119 (Mo. App. E.D. 2009). Thus, the mere asking of this question—which contained no reference to any specific inadmissible prior

7

conduct anyway—in no way obligated the court to *sua sponte* declare a mistrial or otherwise further admonish the jury. We find Huffman's argument particularly spurious because the question had been withdrawn and the jury had been instructed at the beginning of trial that questions are not evidence, that nothing in a question should be presumed true and that questions to which objections were sustained should be disregarded. See id. (no prejudice in failing to *sua sponte* declare mistrial based on unanswered question where jury instructed that questions are not evidence); see also State v. Lloyd, 205 S.W.3d 893, 908 (Mo. App. S.D. 2006) (same).

Point III is denied.

The judgment is affirmed.

_____
ROBERT G. DOWD, JR., Judge

Lawrence E. Mooney, P.J. and
Sherri B. Sullivan, J., concur.